OPINION OF THE COURT
Peter M. Wendt, J.
*587 This is a holdover eviction proceeding based on landlord’s claim that respondent’s lease expired August 31, 2008. No other ground for tenant’s eviction is stated in the petition. Petitioner claims that respondent’s tenancy is unprotected by the Rent Stabilization Law of 1969 (hereinafter RSL) or any other eviction protection because her apartment was deregulated due to a high rent vacancy that occurred on March 1, 2001.
Respondent moves for dismissal of the petition. When she took possession under a lease commencing September 1, 2002, the building was receiving a J-51 tax abatement (RPTL 421-a). Under RSL (Administrative Code of City of NY) §§ 26-504.1 and 26-504.2 (a), apartments in buildings receiving J-51 tax abatements may not be deregulated because the rent reaches $2,000 or more per month. Those sections of the RSL were effective July 1993 and amended in 1997. The basic exclusion from high rent deregulation of apartments in buildings receiving tax benefits pursuant to Real Property Tax Law § 421-a has remained intact since the 1993 passage of RSL §§ 26-504.1 and 26-504.2 (a). In Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]), the Court held that the exclusion from high rent deregulation of all apartments in buildings receiving J-51 tax benefits applied to all such units, not simply apartments subject to the Rent Stabilization Law solely because of receiving the tax benefits of Real Property Tax Law § 421-a. In so doing, the Court of Appeals held that the interpretation given to RSL §§ 26-504.1 and 26-504.2 (a) by the New York State Division of Housing and Community Renewal (hereinafter DHCR), allowing apartments which were subject to the RSL before receiving J-51 tax benefits to be deregulated pursuant to high rent deregulation, in spite of receiving the tax benefit, to be directly contrary to the plain language of the RSL and therefore incorrect. {Roberts, 13 NY3d at 285.)
Based on Roberts, the tenant has moved to dismiss the petition herein, as petitioner has conceded that the subject building was indeed receiving a J-51 tax abatement when respondent moved in, and her lease contained no notice that her apartment was rent stabilized because the building was receiving a J-51 tax abatement, but that upon expiration of the tax benefit to landlord, her apartment would be deregulated (RSL § 26-504 [c]). Landlord’s claim of deregulation is based on the fact that the tenant before respondent also paid a rent in excess of $2,000 per month, and that the apartment became subject to high rent deregulation as a result. However, landlord was receiving the *588 benefit of a J-51 tax abatement during the entire tenancy of the prior tenant. This tax abatement continued through the commencement of respondent’s tenancy, and continued for the first nine months of respondent’s first lease term. In such a situation, for the apartment to be subject to deregulation at the expiration of the tax benefit, the tenant’s lease must include a notice in at least 12-point type informing tenant that the unit shall become subject to deregulation upon the expiration of the tax benefit period and the approximate date the tax benefit is scheduled to expire. (RSL § 26-504 [c].) Here, landlord concedes that no such cautionary notice was contained in any of respondent’s leases.
In opposition to respondent’s motion and support of its cross motion, petitioner argues that Roberts should not be applied retroactively, not even to cases such as this one pending when Roberts was decided. However, in rendering its decision, the Court of Appeals did not create a “new principle of law” as argued by landlord’s attorney. Rather, it simply interpreted a statute, according to its plain language, that has been in effect since 1993. The fact that the DHCR had previously misinterpreted RSL §§ 26-504.1 and 26-504.2 (a) does not make the Roberts decision a change in the law subject to prospective application only. The statutory language was always there for everyone and anyone to read. The Court of Appeals was simply clarifying the meaning of a statute that had been in effect long before the dispute between these parties occurred. In fact, if landlord’s argument herein were to be taken literally, the Roberts decision would not even apply to the plaintiffs in that litigation.
Courts, in writing opinions, do not make law, they interpret law. That is why court decisions which explain the meaning of statutory language are applied retroactively to the effective date of the laws being interpreted. New court decisions are thus generally applied to all pending matters. (Harper v Virginia Dept. of Taxation, 509 US 86 [1993].) Courts decide the law as it is. Judges do not change the law, only the legislature can do that. RSL §§ 26-504.1 and 26-504.2 (a) have always been the law since they were enacted.
An initial interpretation of a statute, even if the statute has been misconstrued previously, does not constitute a change in the law. Where the Insurance Department had promulgated regulations based on a construction of a statute that had been in effect for a number of years, contrary to the subsequent in *589 terpretation articulated by the Court of Appeals, the Court still applied its own decision retroactively. “A judicial decision construing the words of a statute, however, does not constitute the creation of a new legal principle.” (Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982].) “[I]t is well established that, consonant with the common law’s policy-laden assumptions, a change in decisional law usually will be applied retrospectively to all cases still in the normal litigating process.” (Gurnee, 55 NY2d at 191 [internal quotation marks omitted].) This proceeding was actually pending when Roberts was decided, and Roberts therefore must be applied to this proceeding. None of the exceptions to this doctrine apply here. It is noted that landlord has presented no prior court decisions contrary to Roberts, other than the Supreme Court decision reversed by the Appellate Division, First Department, in Roberts. (Roberts v Tishman Speyer Props., L.P., 62 AD3d 71 [1st Dept 2009], affd 13 NY3d 270 [2009].) Thus, there was no “clear past precedent” to the contrary.
To argue that the Roberts ruling was not clearly foreshadowed is unpersuasive in view of the clear language of RSL §§ 26-504.1 and 26-504.2 (a). The impact of retroactive application of Roberts creates no inequity. It simply protects tenants who were initially meant to be protected by the Rent Stabilization Law from eviction for no cause other than expiration of their leases, and protects them from rent increases in excess of those allowed by the RSL.
Petitioner argues that tenant is precluded from objecting to landlord’s treatment of her as exempt from rent stabilization because of the four-year statute of limitations applicable to rent overcharge claims (CPLR 213-a). However, respondent’s claim that the status of her tenancy is rent stabilized cannot be time-barred. It is well settled that the four-year statute of limitations applicable to rent overcharge claims is inapplicable to claims regarding the status of an apartment. Examination of an apartment’s regulatory status, as opposed to whether or not a rent overcharge has actually occurred, is not limited to four years of inquiry. (East W. Renovating Co. v New York State Div. of Hous. & Community Renewal, 16 AD3d 166 [1st Dept 2005]; 656 Realty, LLC v Cabrera, 27 Misc 3d 138[A], 2010 NY Slip Op 50899[U] [App Term, 1st Dept 2010].) The regulatory status of an apartment pertains based upon extrinsic facts. Such circumstances do not “expire” because of a four-year statute of limitations. Rather, the status of the apartment is a continuing *590 circumstance that remains until different facts or events occur that change the status of an apartment. Waiver, estoppel, or a statute of limitations do not change the issue of whether or not an apartment is subject to rent regulation. Here, the fact that the J-51 tax abatement has now expired does not divest the subject apartment of its regulatory status, since the requisite notice, that the rent-stabilized status of the apartment would expire upon expiration of the tax abatement, was not contained in respondent’s initial lease or any subsequent leases. Thus respondent’s tenancy remains subject to the Rent Stabilization Law.
The four-year statute of limitations in CPLR 213-a does, however, apply to tenant’s overcharge claim. Petitioner is not guilty of fraud, or any intentional evasion of the RSL, such as the landlord in Thornton v Baron (5 NY3d 175 [2005]). Rather, petitioner, in setting an unregulated rent for respondent, was simply acting in a manner then consistent with Rent Stabilization Code (9 NYCRR) § 2520.11 (r) (5) and (s) (2) that the Court of Appeals later ruled, in Roberts, to be a DHCR misinterpretation of RSL §§ 26-504.1 and 26-504.2 (a). Thus, there is no reason the four-year statute of limitations for a rent overcharge claim (CPLR 213-a) should not be applied to the parties herein. Accordingly, respondent’s counterclaim based on rent overcharge cannot exceed the four-year period before it was interposed in October 2008. Thus, the base date rent for this purpose is the rent in effect in October 2004, in the amount of $2,250 per month, pursuant to the lease between the parties commencing September 1, 2004. Also, since the landlord herein committed no fraud or conscious evasion of the RSL, respondent is not entitled to an award of treble damages.
For the above reasons, landlord is neither being penalized nor prejudiced by the fact that it will only be allowed to collect a legal rent-stabilized rent based on allowable Rent Guidelines Board increases over the $2,250 per month rent respondent herself actually paid on the base date, starting September 2004. The fact that landlord will not be allowed to evict respondent other than for a ground cognizable under the RSL does not constitute a “penalty” either. It is simply being required, without fine or treble damages being assessed against it, to comply with the Rent Stabilization Law, which the Court of Appeals, in Roberts, has ruled applies to apartments in buildings which, like the one at issue herein, have received a J-51 tax abatement. Since no notice pursuant to RSL § 26-504 (c), that the unit *591 would become subject to deregulation upon expiration of the tax benefit period, was included in any of respondent’s leases, she is protected from eviction based upon simple expiration of her most recent lease.
Here, absolutely no windfall will inure to the respondent. As seen above, the overcharge respondent has actually paid under her leases, if any, was minimal, and petitioner, who relied upon the DHCR interpretation of the statute, although incorrect, will not be subject to treble damages for the small overcharge, if any, that occurred within four years before respondent interposed her counterclaim herein based upon rent overcharge. All that will occur is that landlord will not be able to evict Ms. Lucas simply because her lease expired. This does not preclude the landlord from evicting respondent in the future for any of the grounds cognizable under the RSL. Thus, petitioner’s argument that retroactive application of Roberts to this proceeding would deprive it of due process of law is specious. (See e.g. Rent Stabilization Assn. of N.Y. City v Higgins, 83 NY2d 156, 171-173 [1993].)
For the above-stated reasons, respondent’s motion to dismiss this holdover proceeding based upon mere expiration of her lease is granted. As explained by the Court of Appeals in Roberts, respondent, who took possession when landlord was still receiving a J-51 tax abatement, is protected by the RSL. Had her lease included a notice under RSL § 26-504 (c) that she was thus temporarily protected by rent stabilization because landlord was receiving the tax abatement, but that such protection would terminate upon expiration of landlord’s tax abatement, the facts would be different. However, this court is required to apply the facts as they are, not as petitioner wishes them to be. Therefore, respondent remains a rent-stabilized tenant, and she cannot be evicted based upon mere expiration of her lease, which has never been a permissible ground to evict a tenant under the RSL. Also, for the above-stated reasons, respondent’s motion insofar as it seeks an award of treble damages is denied.
Since respondent is protected from eviction by the Rent Stabilization Law, petitioner’s cross motion for summary judgment awarding it possession of respondent’s apartment and an award of use and occupancy at the market rate is denied.
Respondent also seeks to conduct discovery. Other than her request that petitioner be required to produce a copy of her original lease, respondent has failed to show ample need for *592 discovery. As she can only obtain an award for any rent overcharge she has actually paid since October 2004, based upon the rent payable at that time, and the court has ruled she cannot collect treble damages, all the pertinent facts for her overcharge claim are entirely within respondent’s knowledge. Petitioner has conceded that none of her leases contained the notice required by RSL § 26-504 (c). Certainly no depositions should be ordered under these circumstances. However, a copy of her first lease is relevant to her counterclaims. It would certainly not be burdensome upon the landlord to provide respondent with a copy of her original lease, and it would cause no undue delay of this proceeding to require such production of the single pertinent document. Accordingly, respondent’s motion for discovery is denied, except to the extent that petitioner is ordered to provide respondent’s attorney with a copy of the first lease between the parties within two weeks after service of this order together with notice of entry.
Respondent is clearly the prevailing party in this proceeding, as she has succeeded in having landlord’s central claim in the holdover petition, seeking possession of her apartment, dismissed on the merits. Thus, if the lease between the parties contains a clause allowing landlord (or both landlord and tenant) to recover attorneys’ fees as prevailing party in a court proceeding, respondent would be entitled to an award of attorneys’ fees under Real Property Law § 234 as the prevailing party herein.
This matter is set down in Part A on June 23, 2010, at 9:30 a.m., for a trial on respondent’s claims for rent overcharge in the amount she has actually paid over and above the maximum collectible rent-stabilized amount since October 2004. At the trial, respondent may seek to prove her counterclaim for attorneys’ fees pursuant to Real Property Law § 234 if the lease between the parties has the applicable clause regarding legal fees.