OPINION OF THE COURT
Per Curiam.
Order, dated May 25, 2010, modified to deny tenant’s application for attorney’s fees, and, as modified, affirmed, without costs.
Landlord commenced this holdover summary proceeding in September 2008, based upon allegations that tenant’s lease agreement for the purportedly unregulated apartment expired by its own terms on August 31, 2008. Specifically, the petition alleged that the “apartment was decontrolled and became subject to the market rate because of a high rent vacancy that occurred on March 1, 2001.” Upon the parties’ respective cross *49 motions, Civil Court, among other things, dismissed the petition on the ground that the apartment was subject to rent stabilization and directed a hearing in connection with tenant’s counterclaims for rent overcharges and attorney’s fees.
We agree, essentially for the reasons stated by Civil Court (28 Misc 3d 585 [2010]), that landlord is precluded from relying upon the luxury decontrol provisions of the Rent Stabilization Law “by virtue of’ its receipt of J-51 tax benefits (see Rent Stabilization Law of 1969 [Administrative Code of City of NY] §§ 26-504.1, 26-504.2 [a]). The holding of Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]), that apartments in buildings receiving J-51 tax benefits are exempt from high rent deregulation regardless of how they became subject to rent stabilization, was properly applied retroactively (see Roberts v Tishman Speyer Props., L.P, NYLJ, Aug. 6, 2010, at 43, col 1 [Sup Ct, NY County, Lowe, III, J.]). Roberts “did not ‘establish a new principle of law.’ It merely construed a statute that had been in effect for a number of years ... A judicial decision construing the words of a statute . . . does not constitute the creation of a new legal principle” (Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192 [1982], cert denied 459 US 837 [1982]).
We also sustain Civil Court’s ruling that, although the J-51 tax abatement period has now expired, tenant’s apartment remains subject to rent stabilization, in the absence of any showing that landlord provided the applicable lease notice informing tenant that the apartment was to become deregulated at the expiration of the tax abatement period (see Rent Stabilization Law § 26-504 [e]; East W. Renovating Co. v New York State Div. of Hous. & Community Renewal, 16 AD3d 166, 166-167 [2005]; 254 PAS Prop. LLC v Gamboa, 16 Misc 3d 131[A], 2007 NY Slip Op 51429[U] [App Term, 1st Dept 2007]). We acknowledge that the strict application of the J-51 notice requirement in the circumstances here present may work a hardship on this landlord. After all, landlord, in good faith reliance on DHCR’s longstanding and unambiguous interpretation of the luxury decontrol statute — codified in Rent Stabilization Code (9 NYCRR) § 2520.11 (o) and unchallenged for the better part of a decade until determined to be erroneous by the Roberts court— proceeded with the understanding that it was exempt from the notice requirement based upon a reasonable, but as it turns out mistaken, belief that respondent’s tenancy was not subject to rent stabilization coverage in the first instance. However, we are constrained to strictly enforce the statutory J-51 notice *50 requirement as written, without engrafting onto the regulatory framework equitable factors not specified therein.
With respect to tenant’s rent overcharge counterclaim, we agree that no basis was shown for the court to go outside the four-year look-back period (see Rent Stabilization Law [Administrative Code of City of NY] § 26-516 [a] [ii] [2]; cf. Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 364-365 [2010]), or to impose treble damages upon landlord (see generally Matter of Round Hill Mgt. Co. v Higgins, 177 AD2d 256 [1991]), tenant having failed to demonstrate a tenable claim of fraud or willfulness on the landlord’s part. Nor has tenant shown any basis for application of the Thornton default formula (see Thornton v Baron, 5 NY3d 175 [2005]) to determine the legal rent for the apartment (see Matter of Cabrini Realty v New York State Div. of Hous. & Community Renewal, 6 AD3d 280, 281 [2004]; Lexford Prop., L.P. v Alter Realty Co., Inc., 31 Misc 3d 142[A], 2011 NY Slip Op 50859[U] [App Term, 1st Dept 2011]).
We part ways with the motion court only with respect to the issue of attorney’s fees. Granted, landlord does not and cannot reasonably challenge tenant’s status as prevailing party, and this even though tenant was unsuccessful in several of her arguments relating to her rent overcharge counterclaim (see Senfeld v I.S.T.A. Holding Co., 235 AD2d 345 [1997], lv denied 92 NY2d 818 [1998]). However, we find persuasive landlord’s argument that the imposition of attorney’s fees against it would be unfair under the particular circumstances of this case, where its possessory claim, albeit unsuccessful, was at least colorable at the time of commencement of the holdover proceeding (see Wells v East 10th St. Assoc., 205 AD2d 431 [1994], lv denied 84 NY2d 813 [1995]; Roxborough Apts. Corp. v Becker, 11 Misc 3d 99, 101 [2006]).
In closing, we note our recognition that the rent stabilization scheme, even without factoring in differences in interpretation between court and agency, can prove to be an “impenetrable thicket confusing not only to laymen but to lawyers” (La Guardia v Cavanaugh, 53 NY2d 67, 70 [1981], quoting Matter of 89 Christopher v Joy, 35 NY2d 213, 220 [1974]). Given this reality, and with an eye toward ameliorating any “unacceptable burdens” that may be imposed, on this and other similarly situated landlords in the wake of Roberts (13 NY3d at 287), we invite the Legislature to consider amending the Rent Stabilization Law to include a “good faith reliance” defense of the type *51 presently found in several federal statutes affecting various areas of the law (see e.g. Truth in Lending Act, 15 USC § 1640 [f]; Portal-to-Portal Act of 1947, 29 USC § 259 [a] [each precluding liability for acts done or omitted “in conformity” with agency interpretation of statute]).
Schoenfeld, J.P, Shulman and Hunter, Jr., JJ., concur.