Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (2018 NY Slip Op 05797)





Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal


2018 NY Slip Op 05797


Decided on August 16, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 16, 2018

Friedman, J.P., Gische, Kapnick, Kahn, Moulton, JJ.


5026 101235/15 101236/15

[*1]In re Regina Metropolitan Co., LLC, Petitioner-Appellant,
v
New York State Division of Housing and Community Renewal, Respondent-Respondent, Leslie E. Carr, Intervenor-Respondent. Community Housing Improvement Program, Inc., Amicus Curiae.
In re Leslie E. Carr, Petitioner-Appellant,
v
New York State Division of Housing and Community Renewal, Respondent-Respondent, Regina Metropolitan Co., LLC, Intervenor-Respondent.


Horing, Welikson & Rosen, P.C., Williston Park (Niles C. Welikson of counsel), for Regina Metropolitan Co., LLC, appellant/respondent.
Vernon & Ginsburg, LLP, New York (Darryl M. Vernon of counsel), for Leslie E. Carr and Harry A. Levy, respondents/appellants.
Mark F. Palomino, New York (Darryl M. Vernon of counsel), for respondent.
Graubard Miller, New York (Peter A. Schwartz of counsel), for amicus curiae.



Order and judgment (one paper), Supreme Court, New York County (Alice Schlesinger, J.), entered October 24, 2016, denying the petitions to modify a determination of respondent New York State Division of Housing and Community Renewal (DHCR), dated May 13, 2015, which affirmed an order of the rent administrator, dated February 26, 2014, to the extent that, for purposes of determining a rent overcharge, it calculated a base date rent by looking back more than four years from the rent overcharge complaint, and denied petitioner tenants' requests for treble damages and attorneys' fees, and dismissing the proceedings, modified, on the law, to grant landlord's petition to the extent of remanding the matter to DHCR to recalculate the base date rent by looking back to four years before the filing of the overcharge complaint, and otherwise affirmed, without costs.
This appeal follows in the long wake of Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]). In Roberts, the Court of Appeals held that apartments in buildings receiving [*2]benefits under the City's J-51 tax incentive program remain subject to rent stabilization for at least as long as the building continues to enjoy J-51 benefits [FN1]. In Gersten v 56 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]), this Court held that Roberts should be applied retroactively.
Rent Stabilization Law (RSL) § 26-517(a)(2) and CPLR 213-a set a four year limitations period for actions alleging rent overcharge. Therefore, a tenant who prevails on a Roberts claim is entitled to recoup only rent overcharges that accrued in the
four years before the filing of the complaint (see e.g. Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149 [2002]). The beginning date for the calculation of recoupment is known as the "base date."
The primary question presented in this appeal is how to determine the proper rent on the base date.
Petitioner Regina Metropolitan Co., LLC. (landlord) is the owner and landlord of the residential apartment building located at 27 West 96th Street in Manhattan. Effective during the 1999-2000 tax year, landlord began receiving J-51 tax benefits, and it continued to do so until 2013. The building was subject to rent stabilization before, and independent of, the receipt of such benefits. In 2003, when the tenant of the subject apartment vacated, the monthly regulated rent was $2,096.47, above the then applicable $2,000 threshold for vacancy deregulation. Landlord set the market rate rent for the subsequent tenant at $4,500. Petitioner tenants (tenants) moved into the building pursuant to a lease for the period August 1, 2005 to August 1, 2007, at a monthly rent of $5,195. The lease stated on its face that the apartment was not subject to rent regulation.
Landlord could not deregulate the apartment under Real Property Tax Law § 489(7)(b)(1) while simultaneously receiving J-51 tax benefits. Landlord maintains that it deregulated the apartment in 2003 due to a misunderstanding of the law  a misunderstanding once widely held in the real estate industry and shared by DHCR  which was later corrected by Roberts (13 NY3d 270 [2009], supra). It is uncontested that, in light of Roberts and Gersten (88 AD3d 189, supra), the unit was improperly deregulated and remains a rent-stabilized apartment. It is also uncontested that an overcharge ensued. What is contested, however, is the calculation of the overcharge and, specifically, the base date rent on November 2, 2005, four years before tenants' filing of the overcharge complaint.
Before DHCR, landlord maintained that the base date rent should be set at the amount that obtained on November 2, 2005, pursuant to the tenants' lease, which was $5,195. Landlord contends that in the absence of any evidence of a fraudulent scheme to evade rent regulation, there is no support for avoiding the strict four-year limitations period of RSL § 26-517(a)(2) and CPLR 213-a.
Tenants argued before DHCR that there was evidence that landlord had engaged in a fraudulent scheme to evade rent regulation of the unit and that the correct rent should be set via the default formula specified in Thornton v Baron (5 NY3d 175 [2005]) or the similar default formulas under Rent Stabilization Code (RSC) (9 NYCRR)§ 2522.6(b)(2) and (3). Additionally, even if a default formula would not be appropriate, tenants asserted that the rent should be frozen at $2,096.47 because, as in Jazilek v Abart Holdings, LLC (72 AD3d 529 [1st Dept 2010]), landlord failed to file proper and timely rent registration statements. Tenants also sought treble damages and attorneys' fees.
The Rent Administrator (RA) did not fully agree with either landlord's or tenants' analysis. In an order dated February 26, 2014, the RA found that the landlord did not engage in a [*3]fraudulent scheme to avoid rent stabilization. He found that there had been a rent overcharge, but he did not calculate the base date rent according to either of the opposing methods urged by landlord and tenants. Instead, the RA looked back beyond the four-year limitations period to find the last legal regulated rent, which was the $2,096.47 rent charged in 2003. To that amount the RA added all subsequent rent increases allowed under rent stabilization, and found the base date rent was $3,325.24. From this amount he calculated a rent overcharge of $207,192.59, plus interest, which came to $283,192.59 [FN2]. The RA offered to hear evidence from the landlord concerning individual apartment improvements (IAIs) to the unit that could potentially increase the regulated rent. However, the landlord never offered such evidence to the RA. The RA further found that landlord had demonstrated that the overcharge was not willful and that treble damages were therefore not warranted. In so finding, the RA cited the general confusion about the impact of the J-51 program on rent stabilization before Roberts and Gersten. Finally, the RA found that tenants were not entitled to attorneys' fees.
Both sides filed Petitions for Administrative Review (PARs). The PARs were consolidated. The Commissioner affirmed the RA's order and denied the PARs. The Commissioner declined to hear landlord's evidence concerning alleged IAIs pertinent to the unit, on the ground that no such evidence was presented to the RA. Both sides filed article 78 petitions. Supreme Court denied the petitions, affirming DHCR's determination. We now modify.
Courts will not disturb an administrative agency's determination unless it lacks any rational basis (see Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149 [2002], supra). An agency's interpretation of its own regulations "is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]; see Samiento v World Yacht Inc., 10 NY3d 70, 79 [2008]). However, "where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations" (Roberts, 13 NY3d at 285 [internal quotation marks omitted]).
We do not disturb DHCR's fact-finding. DHCR's determination that landlord did not fraudulently deregulate the unit has a rational basis. An increase in rent, standing alone, does not establish a fraudulent scheme to evade rent stabilization (see Conason v Megan Holding, LLC, 25 NY3d 1, 16 [2015]). Tenants point to suspicions about landlord's claimed IAIs and its failure to provide a rent-stabilized lease at some unspecified time after Roberts. These vague assertions provide no basis for disturbing DHCR's finding that there was no evidence of fraud by landlord. As discussed at greater length below, the absence of fraud affects our analysis of how DHCR calculated the base date rent.
DHCR's denial of tenants' request for treble damages was rational. Landlord demonstrated that its deviation from rent stabilization was not willful. The Court of Appeals has held that a finding of willfulness "is generally not applicable to cases arising in the aftermath of Roberts. For Roberts cases, defendants followed the Division of Housing and Community Renewal's own guidance when deregulating the units, so there is little possibility of a finding of willfulness" (Borden v 400 E. 55 St. Assoc., L.P., 24 NY3d 382, 398 [2014]). DHCR's determination as to attorneys' fees was within its discretion (see RSL § 26-516[a][4])[FN3]. It was [*4]also not arbitrary and capricious for DHCR to decline landlord's request to provide documentation of IAIs for the first time at PAR-level review (see Matter of Gilman, 99 NY2d at 150).
The most contentious issue presented in this appeal is how to calculate the base date rent as of November 2, 2005. As described above, DHCR looked beyond the four-year limitations period to find the last legal regulated rent ($2,096.47 in 2003), and then added subsequent statutory increases to arrive at a base date rent of $3,325.24. This method of calculation violates the Rent Stabilization Law and the applicable statute of limitations. RSL § 26-516(a)(2) provides:
"[N]o determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed . . . . This paragraph shall preclude examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint pursuant to this subdivision."
RSC § 2526.1(a)(2)(ii) states:
"[T]he rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint . . . shall not be examined."
Finally, CPLR 213-a reads, in its entirety:
"An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action."
While these provisions are detailed and categorical in barring any examination of a unit's rental history beyond the four-year limitations period, the Court of Appeals has carved out an exception for cases where there is evidence that a landlord engaged in a fraudulent scheme to evade rent regulation (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358, 366 [2010]). In Grimm, the landlord raised the rent-stabilized rent upon vacancy in 2000 from $586.86 to $1,450, far in excess of the allowed increase. The tenants were also given a lease without a rent-stabilized lease rider. In 2004, the petitioner tenant moved into the apartment pursuant to a lease that did not say that the unit was rent-stabilized. The rent remained at $1,450. When the petitioner brought a rent overcharge complaint with DHCR in 2005, the rent administrator applied the four-year limitations period and found the base date rent to be the $1,450 specified in the applicable lease in 2001, and thus found there was no overcharge. The Grimm Court found that there was sufficient evidence that the landlord engaged in a fraudulent scheme to evade rent regulation. In such circumstances, "DHCR has an obligation to ascertain whether the rent on the base date is a lawful rent" (id. at 366). The Court of Appeals therefore affirmed this Court's remand to DHCR for further fact-finding.
Grimm invoked the Court's earlier decision in Thornton v Baron (5 NY3d 175 [2005], supra), which held that a lease provision was void as against public policy for exempting an apartment from rent stabilization based on an illusory tenant's agreement not to use the apartment as a primary residence. Thornton rejected the owner's contention that "the legal regulated rent should be established by simple reference to the rental history" on the date four years before the commencement of the overcharge action, because the lease and illegal rent [*5]violated public policy (5 NY3d at 180-181).[FN4]
The Court of Appeals has continued to require a showing of fraud or intentional wrongdoing before courts may allow any look back at a unit's rental history beyond the four-year limitations period. In Matter of Boyd v New York State Div. of Hous. & Community Renewal (23 NY3d 999 [2014], rev'g 110 AD3d 594 [1st Dept 2013]), a J-51 case, the Court of Appeals reversed this Court's remand to DHCR for a fact-finding hearing regarding potential fraud and the legality of the base date rent. The Court, citing Grimm, held that the tenant "failed to set forth sufficient indicia of fraud to warrant consideration of the rental history beyond the four-year statutory period" (id. at 1000-1001). In Conason v Megan Holding, Inc. (25 NY3d 1 [2015], supra), the Court of Appeals found evidence that the landlord engaged in a "stratagem" to remove the tenants from the aegis of rent stabilization, and allowed a look back of more than four years at the unit's rental history (id. at 16).
Following these precedents, in the absence of evidence of fraud, this Court has declined to look back more than four years before the filing of the overcharge complaint to set the base date rent (see Stulz v 305 Riverside Corp., 150 AD3d 558 [1st Dept 2017], lv denied 30 NY3d 909 [2018]; Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105 [1st Dept 2017], lv dismissed 30 NY3d 961 [2017]; Todres v W7879, LLC, 137 AD3d 597 [1st Dept 2016], lv denied 28 NY3d 910 [2016]; but see Taylor v 72A Realty Assoc., L.P., 151 AD3d 95 [1st Dept 2017]; 72A Realty Assoc. v Lucas, 101 AD3d 401 [1st Dept 2012].
In the case at bar, DHCR was not arbitrary and capricious in finding that landlord did not engage in a fraudulent scheme to evade the Rent Stabilization Law. As a consequence, DHCR was prohibited from looking at the unit's rental history before November 2, 2005.
In looking back beyond the four-year limitations period, the Commissioner relied on RSC § 2526.1[a][2][ix] and this Court's decision in 72 Realty Assoc. v Lucas (101 AD3d 401 [1st Dept 2012]). Section 2526.1(a)(2)(ix) is inapposite, as it applies only to apartments that were "vacant or temporarily exempt from regulation pursuant to section 2520.11" (RSC § 2526.1[3][iii]). The apartment was not vacant, as tenants resided there during the relevant period. It was also not "temporarily exempt." Section 2520.11 lists specific situations where units are exempt from rent regulation, none of which fit the facts at bar. 72 Realty Assoc. was decided before the Court of Appeals' decision in Matter of Boyd (23 NY3d 999), and it does not discuss Grimm or the need for some fraudulent behavior by the landlord as a predicate to an examination of rental history beyond four years.
After Supreme Court issued its decision affirming DHCR, this Court issued Taylor v 72A Realty Assoc., L.P. (151 AD3d 95 [1st Dept 2017], supra), another J-51 case, upon which the dissent relies. In Taylor, this Court allowed a look back of more than four years in the absence of fraud. The Taylor Court asserted correctly that the literal application of CPLR 213-a could "allow the owner to collect rent that might be in excess of what it could have otherwise charged plaintiffs" if the landlord had properly understood the import of J-51 benefits (151 AD3d at 106). The Court in Taylor, and the dissent in this case, cite cogent policy reasons for calculating the rent using the method DHCR used here.
However, the legislature has made a different policy determination. It not only set a four-[*6]year limitations period, but it also explicitly barred any "examination of the rental history of the housing accommodation prior to the four-year period preceding the filing of a complaint" (RSL § 26-516[a][2]). The Court of Appeals has found that the purpose of the four-year limitations period is "to alleviate the burden on honest landlords to retain rent records indefinitely" (Thornton, 5 NY3d at 181). The Court of Appeals has made what we have called a "limited exception" to the four-year limitations period in cases where landlords act fraudulently (Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 68 AD3d 29, 33 [1st Dept 2009], affd 15 NY3d 358 [2010]). To expand this exception to landlords who have not engaged in fraud would create a much broader exception that would appear to negate the temporal limits contained in the Rent Stabilization Law and the CPLR.
Taylor runs athwart the Court of Appeals' decisions in Grimm and Boyd and the bulk of the authority of this Department, discussed above. These decisions do not rest on the factors the dissent uses to distinguish them from the instant appeal. Rather, the relevant body of authority rests upon the presence, or absence, of fraudulent behavior by the landlord. Where, as here, there are insufficient indicia of a fraudulent scheme to evade rent regulation, there can be no consideration of the rental history beyond four years for the purpose of calculating a rent overcharge.
The dissent attempts to avoid CPLR 213-a's four-year limitation by stating that it is "logical" that CPLR 213-a's reference to the "rental history" means only the rental history found in the annual filings with DHCR. Using this unduly limited definition of "rental history," the dissent then argues that where, as here, there are no recent filings with DHCR (because the landlord thought that it had properly deregulated the apartment) courts may look back at evidence concerning rent charged before the base date, and that no predicate showing of fraud is necessary to do so. If the legislature had meant "rental history" to mean "rental history found in the annual filings with DHCR," it could have easily so stated. A far more reasonable interpretation of "rental history" would embrace not just agency records but also the records of the landlord and the tenant, as embodied in ledger books, cancelled checks, rent receipts, expired leases, and the like. Thus, the absence in this case of DHCR rent registrations going back four years does not nullify the temporal strictures of CPLR 213-a.
The dissent asserts that application of the four-year limitations period specified by the legislature in the Rent Stabilization Law and the CPLR will leave tenants with "a right without a remedy." To the contrary, we have held that DHCR is not limited to calculating the base date rent according to the market rate that obtained pursuant to the parties' lease, and that the agency has the discretion to implement other methods of base date rent calculation that do not run afoul of the limitations period (see Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal, (160 AD3d 474 [1st Dept 2018]). Additionally, tenants who reside in apartments covered by Roberts are afforded the Rent Stabilization Law's limitations on rent increases, even if their apartments would
otherwise be subject to luxury decontrol absent the landlord's receipt of J-51 benefits.
Accordingly, we remand the matter to DHCR to recalculate the overcharge and proper rent using a base date rent of four years before the filing of the overcharge complaint.
All concur except Gische and Kapnick, JJ. who dissent in a memorandum by Gische, J. as follows:




GISCHE, J. (dissenting)


I respectfully dissent and would vote to uphold the methodology used by respondent New York State Department of Housing and Community Renewal (DHCR) to calculate the rent overcharge in this case [FN5]. It is neither arbitrary and capricious nor contrary to law. The methodology applies only to those cases in which a landlord overcharged the tenant, albeit mistakenly, by removing the apartment from rent stabilization at a time when the building was [*7]receiving J-51 tax benefits from the City of New York. In Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]), the Court of Appeals made it clear that although the DHCR had endorsed the underlying practice of luxury decontrolling apartments under these circumstances, it was in contravention of the plain language of the various laws affecting rent stabilization laws. As we have previously recognized, in deciding Roberts, the Court of Appeals left open many important issues resulting from its decision, some expressly, such as retroactivity and statute of limitations, and some sub silencio, such as how to calculate rents for apartments improperly deregulated (see Taylor v 72A Realty Assoc. L.P., 151 AD3d 95, 101 [1st Dept 2017]). The courts and DHCR have since been working to resolve these issues in a consistent and just manner.
In order to establish a base rent in this Roberts overcharge case, the DHCR looked at the last rent-stabilized rent publicly registered with the DHCR, which was in 2003, and then applied all of the rent-stabilized increases that otherwise would have been allowed during the relevant time. The DHCR methodology effectively establishes a base rent as if the landlord had adhered to Roberts and not improperly removed the apartment from rent stabilization. The overcharge award was then calculated using only the four-year period immediately preceding the date on which the overcharge complaint was filed. The gravamen of my disagreement with the majority's view is that in Roberts overcharge cases, determination of the base rent strictly prohibits any consideration of the last legally registered regulated rent where the rent was set more than four years before the filing of an overcharge complaint. As more fully explained herein, this limitation on the look back period for Roberts overcharge cases, which do not implicate fraud-based claims, was already rejected by a unanimous bench of this Court in Taylor (151 AD3d at 105). More importantly, the result in Taylor was warranted, if not mandated, by this Court's earlier, unanimous decision in Gersten v 56th 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]), giving Roberts retroactive effect. I further disagree with the majority's conclusion that its result is required by CPLR 213-a.
The landlord, DHCR, and the tenants all agree on most of the salient facts in these symbiotic article 78 proceedings, one brought by the landlord, the other by the complaining tenants. It is undisputed that the landlord deregulated apartment 10D at 27 West 96th Street, New York, New York, in 2003, when the rent rose to $2,096.47, which exceeded the threshold required for luxury decontrol at that time. The landlord, however, was simultaneously receiving tax incentives for the building under the City's J-51 program (see Administrative Code of City of NY § 11—243)[FN6]. Those incentives did not expire until sometime in 2013. The landlord's actions at the time were in conformity with the DHCR's 1996 administrative interpretation of the applicable laws. Those actions, however, proved to be in contravention of the Rent Stabilization Laws (Roberts, 13 NY3d at 286, 287).
As a consequence of its decision to luxury deregulate the apartment in 2003, the landlord stopped registering the rent with DHCR. The rent for the apartment was last publicly registered in 2003, before the tenants filed their overcharge complaint. The rent registered was $2,096.47, reflecting the amount the landlord charged an intervening tenant in occupancy before the [*8]complaining tenants. The landlord did not register that intervening tenancy or the rent charged, believing that the apartment was deregulated in 2003.
The complaining tenants first took occupancy of the apartment pursuant to a two-year lease effective August 1, 2005, at a monthly market rent of $5,195 per month. The lease was subsequently twice renewed, each time for a one-year term. The first renewal, effective August 1, 2007, was at a monthly rent of $5,700; the next renewal, effective August 1, 2008, was at a monthly rent of $6,150. The tenants subsequently became month-to-month tenants. It is undisputed that the tenants were never offered rent-stabilized leases and that the rents they were charged were free market rents, bearing no relationship to capped rent increases permitted under rent stabilization.
On November 2, 2009, two weeks after Roberts was decided by the Court of Appeals, the tenants filed a rent overcharge complaint with DHCR, alleging that the rent of $5,195, charged and collected by the landlord on December 1, 2005, constituted an overcharge. While the overcharge complaint was pending, in 2010, the landlord filed DHCR rent registrations for the apartment for the years 2005 through 2010. The registrations reflected the market rents set forth in the non-rent-stabilized leases that were actually charged and collected from the tenants.
There is no dispute that under the authority of Roberts, the apartment should not have been luxury decontrolled in 2003 and that the tenants were entitled to a rent-stabilized lease and renewals for the duration of their tenancy (see also 72A Realty Assoc. v Lucas, 101 AD3d 401, 401-402 [1st Dept 2012] [Lucas]). Even though permissible increases (i.e., for a vacancy, major capital improvements [MCIs] and IAIs) may have brought the rent over the luxury decontrol threshold in 2003, the apartment remained subject to rent regulation until the first vacancy following the expiration of the J-51 benefits occurred (Matter of Park v New York State Div. of Hous. & Community Renewal, 150 AD3d 105 [1st Dept 2017], lv. dismissed 30 NY3d 961 [2017]). The landlord would have been allowed to collect the rent, albeit in an amount over the threshold, but the tenants would have had the benefit of capped increases and rent-stabilized leases (Park, 150 AD3d at 111). There is also no dispute that in accordance with the applicable four-year statute of limitations, no overcharge can be awarded for any period before November 2, 2005, which is four years before the tenants' overcharge complaint.
Even if the landlord was simply mistaken in returning the apartment to a free market rent in 2003, the fact remains that the landlord did not notify the tenants when they took occupancy in 2005 that the apartment was subject to rent stabilization or offer them a rent-stabilized lease. After 2003 (until 2010), there was no public record of the apartment's rent history filed with the DHCR, as otherwise required under the applicable rent stabilization laws.
The rent administrator found the last rent registered with the DHCR in 2003 reliable and used it to computationally determine the rent-stabilized rent that the landlord could have actually, legally, charged from 2003 forward to 2005. In this manner, the DHCR was able to establish that the legal regulated rent that the tenants could have been charged for the subject apartment on November 2, 2005 was $3,325.24 per month. This base rent consists of the last registered rent in 2003 of $2,096.47, plus permissible increases, including an MCI, a longevity bonus, and a vacancy increase. Based upon this computation, the rent administrator determined that the rent of $5,195 charged when the tenants first took occupancy in August 2005 was improper and, therefore, an overcharge. The methodology that DHCR applied restores the apartment's rent-stabilized status and puts the parties back in the position they would have been in had the landlord followed the reasoning of Roberts in the first place.
In Taylor, this Court expressly addressed the issue of how to calculate base rents in Roberts overcharge cases. Although DHCR did not have the benefit of our decision at the time it made its determination [FN7], the methodology we endorsed in Taylor (151 AD3d at 105) is exactly the same methodology used by the DHCR when it affirmed the rent administrator's order and denied each side's petition for administrative review (PAR) in May 2015. The majority's rejection of DHCR's methodology in this case is directly contrary to our unanimous decision in [*9]Taylor. Although the majority cites this Court's decision in Stulz v 305 Riverside Corp. (150 AD3d 558 [1st Dept 2017], lv. denied 30 NY3d 909 [2018]), decided just two days before Taylor, Stulz's limited discussion on the important issue raised by this appeal yields little analysis. More recently, in Matter of 160 E. 84th St. Assoc. LLC v New York State Div. of Hous. & Community Renewal, this court supported Taylor's important, take-away principle, that the illegal market rate rent charged by a landlord four years before an overcharge complaint is filed cannot serve as the base date rent, even in the absence of fraud (160 AD3d 474, 474-475 [1st Dept 2018]). More importantly, Taylor's analysis, followed in this dissent, is warranted by cases that preceded Stulz. DHCR's methodology is analytically and logically required by our decision in Gersten. In Gersten, this court determined that retroactive application of Roberts was warranted because Roberts did not establish a new principle of law, but rather merely construed a statute that had been in effect for a number of years (88 AD3d at 198). In weighing the equities involved, this Court found that retroactive application of Roberts would protect tenants from rent increases in excess of those allowed under the Rent Stabilization Law. We cautioned that a contrary ruling, that is, applying Roberts only prospectively, would allow landlords to collect rent in excess of what was allowed by law, based upon a faulty statutory interpretation (id.).
If Gersten is to have any effect, the majority's adoption of the landlord's arguments limiting the look back period for establishing the base rent in Roberts overcharge cases must be rejected. Otherwise the tenants before us now, and others similarly situated, will have a right without a remedy [FN8]. They will be entitled to the protections of the rent regulations, including a rent-stabilized lease and rent-regulated rents, but be unable to recover the full extent of their overcharges. Moreover, the landlords will be able to continue to charge fair market rents, in complete contravention of a retroactive treatment of Roberts.
This case illustrates my point. Using the landlord's methodology, which is to use the free market rent it charged and the tenant paid four years before the overcharge complaint was filed (i.e., $5,195 on November 2, 2005), results in a total overcharge of only $10,271.40, leaving the collectible rent at $6,334.12 as of the date of the parties' PARs. The market rent will serve as the base going forward for all future
rent-stabilized tenants. However, using the methodology that DHCR applied, which is the same as what we endorsed in Taylor, results in an overcharge of $285,390.39 for exactly the same four-year period, using a base rent of $3,325.24. The collectible rent as of the date of the parties' PARs is $4,136.32. DHCR's approach is consistent with the balancing of the equities in Gersten, gives Roberts its retroactive effect, and recognizes that these kinds of overcharges are a special category of overcharge cases, which only emerged in the aftermath of Roberts.
The underpinnings of a Roberts overcharge complaint, unlike the complaints of other types of overcharges, is not based on claims of fraud or willfulness (see Borden v. 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 398 [2014] [allegedly illegally deregulated apartments]). A finding of willfulness is generally not applicable to Roberts overcharge cases (see Todres v W7879, LLC, 137 AD3d 597 [1st Dept 2016], lv denied 28 NY3d 910 [2016]). I am not suggesting that the DHCR methodology use in this case applies in any overcharge case other than a Roberts overcharge. Given the unique circumstances of Roberts overcharges and their complicating factors, this methodology rectifies the erroneously deregulated rent and ensures that subsequent [*10]legal regulated rents are based upon a reliable rent. It restores the parties to the lawful position they would have been in had the Roberts interpretation of the applicable rent stabilization laws been followed at the relevant time.
One of the main issues raised by the landlord is that DHCR's methodology violates the four-year statute of limitations set forth in CPLR 213-a because the DHCR has impermissibly considered the rental history preceding the base date of November 2, 2005. In its entirety, CPLR 213-a provides as follows:
"An action on a residential rent overcharge shall be commenced within four years of the first overcharge alleged and no determination of an overcharge and no award or calculation of an award of the amount of any overcharge may be based upon an overcharge having occurred more than four years before the action is commenced. This section shall preclude examination of the rental history of the housing accommodation prior to the four-year period immediately preceding the commencement of the action" (emphasis added).
The Rent Stabilization Law contains similar language, limiting examination of the rental history to the four-year period preceding the filing of an overcharge complaint (see Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26—516[a][2]). In relevant part, this section provides that "[w]here the amount of rent set forth in the annual rent registration statement filed four years prior to the most recent registration statement is not challenged within four years of its filing, neither such rent nor service of any registration shall be subject to challenge at any time thereafter" (emphasis added) (id. § 26-516[a]).
Although the term "rental history" is not defined in CPLR 213-a, it logically refers to the rental history found in the annual filings with DHCR, given the four-year limitation's purpose, which is to alleviate the burden on honest landlords' retention of rent records indefinitely (Matter of Cintron v Calogero, 15 NY3d 347, 354 [2010] [internal citations omitted]; see also Thornton, 5 NY3d at 180-181). This interpretation is also evident from Rent Stabilization Law § 26—516(a)(2), which defines the trigger for the four-year period within which to challenge a rent-stabilized rent as the rent set forth in the "annual rent registration statement filed four years prior to the most recent registration statement." Likewise, Rent Stabilization Law § 26-516(g) provides that any owner that has registered a housing accommodation "shall not be required to maintain or produce any records relating to rentals of such accommodation for more than four years prior to the most recent registration or annual statement for such accommodation." These statutes strongly support an interpretation that the reference in the CPLR to a rental history is a reference to the rental history contained in public filings.
Whereas a rent-regulated apartment has a public, and therefore, discoverable "rental history," given the public records that must be filed with DHCR (Rent Stabilization Code § 2528.3), a free market apartment does not have a publicly available rental history because the rents for an unregulated apartment do not have to be registered with DHCR. There is no need for such information because freely negotiated market rents are not subject to claims of overcharge. At bar, when the overcharge complaint was filed, there was no "rental history" for the apartment that could be used for the four-year look back period due to the landlord's treatment of the apartment as luxury decontrolled.
In construing CPLR 213-a's look back period, the courts have been flexible when the overcharge does not fit the typical case. For instance, where there is a rent reduction order in effect and it was imposed before the four-year limitations period  even if many years earlier  the order must be considered in calculating the rent overcharge the landlord owes (Matter of Cintron, 15 NY3d at 356). Other instances where a look-back of more than four years is warranted include the calculation of a longevity rent increase (see Matter of H.O. Realty Corp. v N.Y. Div. of Hous. & Community Renewal, 46 AD3d 103,109 [1st Dept 2007], citing Matter of Ador Realty, LLC v Div. of Hous. & Community Renewal, 26 AD3d 128 [2d Dept 2005]), and to determine whether an apartment is subject to rent stabilization at all (see East W. Renovating Co. [*11]v New York State Div. of Hous. & Community Renewal, 16 AD3d 166, 167 [1st Dept 2005]). This is because the issue of an apartment's regulated status is inseparable from the issue of whether there is an overcharge.
Flexibility in the statute's application is also evident in those circumstances in which an apartment's rental history is unreliable, typically due to its fraudulent deregulation or some willful attempt to evade the rent regulation laws (see e.g. Conason v Megan Holding, LLC, 25 NY3d 1 [2015]; Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358 [2010]; Thornton, 5 NY3d 175). In those circumstances, overcharge claims permit review of an apartment's rental history before the four-year look back period in setting a base rent.
We acknowledge that there is no evidence here of a fraudulent scheme to deregulate the apartment, leading the majority to embrace the landlord's argument that strict application of the four year statute of limitations is required. Although the market rents in Roberts overcharge cases are not tainted by fraud, or some fraudulent scheme, they are, nonetheless, clearly incorrect under rent regulation. The last rent publicly filed with the DHCR is a reliable starting place to calculate the rent that could have been charged but for the improper deregulation. The filed rent should then be adjusted for allowable rent-stabilized increases to reliably determine the regulated rent that should have been filed for the apartment four years preceding the filing of any rent overcharge complaint. The tenants were legally entitled to a rent-regulated lease for the apartment when they rented it in 2005, not a free market, unregulated lease. Although they accepted a free market lease, it is beyond cavil that they did not, nor could they, waive the protections of the of the rent stabilization laws, unless the landlord satisfied the conditions for such deregulation
(see Gersten, 88 AD3d at 199).
As this Court explained in Taylor, and as the DHCR correctly determined here, the tenants cannot collect more than four years' worth of overcharges, but the rent permitted to be charged beginning four years before the overcharge is filed and in the years thereafter must be mathematically corrected so that it comports with permissible guideline and other increases. This is the only way the rent-regulated status of the apartment can truly be effectuated.
The majority's reliance on Matter of Boyd v New York State Div. of Hous. & Community Renewal (23 NY3d 999 [2014]) for a contrary result is misplaced, because Boyd is not a Roberts overcharge case [FN9]. Although Boyd did involve a rent-stabilized apartment in a building receiving J-51 tax benefits, the apartment had never been luxury deregulated. The issue in Boyd was whether an overcharge complaint filed by the tenant more than four years after the first overcharge claimed was timely. The building owner had registered the monthly rent for the apartment, but the tenant, nonetheless, claimed that the landlord's fraud concerning certain asserted improvements (IAIs) to her apartment warranted disregard of the four-year look back period. The Court of Appeals dismissed the complaint because the tenant had not set forth sufficient indicia of fraud to warrant consideration of the registered rental history beyond the statutory four-year period allowed by CPLR 213-a.
A significant difference between Boyd, which was a fairly straightforward overcharge case, and the case before us is that the landlord in Boyd continued to file rent registrations with DHCR throughout, allowing the tenant to avail herself of such public information so she could have filed a timely complaint. Contrast that with the situation here, where the landlord stopped filing rent registrations with the DHCR in 2003, so there was no public record of the apartment's rental history available for the tenants to inspect before they filed a complaint (see Matter of Sun v Lawlor, 96 AD3d 685, 687 [1st Dept 2012] [tenant could have timely proceeded on his claim [*12]because DHCR's order was part of its public record]).
Since the retroactive application of Roberts is intended to protect tenants from increases in excess of those permissible under the Rent Stabilization Law, the importance of setting a correct rent for this apartment is apparent not only for determining the overcharge due the complaining tenants but also for purposes of future rent calculations (see Mon-Rose Realty Corp. v New York State Div. of Hous. & Community Renewal, 255 AD2d 154 [1st Dept 1998]). Here, as in Taylor, although the base date rent is not tainted by fraud, or some fraudulent scheme, it is clearly an incorrect rent for this rent-regulated apartment. As this Court explained in Taylor, and as the DHCR correctly determined, the base date should be adhered to. Although the tenants cannot collect more than four years' worth of overcharges, the overcharges must be based on a mathematically recomputed base date rent that comports with permissible guideline increases. This is the only way that the rent- regulated status of the apartment can be truly effectuated.
We did not, in Taylor, disregard or extend the statute of limitations, nor do I propose doing so now (151 AD3d at 102 ["challenges to the level of rent charged must be made within [the] four-year limitations period . . . immediately preceding the filing of a complaint"]). We cannot, however, blindly use the free market rent charged on the date four years prior to the filing of the rent overcharge claim without further investigation (see Lucas, 101 AD3d 402). While there may be no fraudulent deregulation here, the landlord's error, albeit non-venal, still resulted in increasing a rent-stabilized rent to a free market rent well beyond what was legally permissible. As we observed in Gersten, "a tenant should be able to challenge the deregulated status of an apartment at any time during the tenancy" (88 AD3d at 199). The issues of whether an apartment is rent-regulated and, if so, whether the rent charged was legal under the applicable rent laws cannot be teased apart, because they are inseparable issues. In putting the apartment back onto its rent stabilization track, further review of the rents charged after 2003, when the landlord deregulated the apartment, is unavoidable (Taylor, 151 AD3d at 105). It is the only way to determine the legally permissible rent-stabilized rent that the tenants should have been charged during the four-year period of overcharged rent.
The majority's reliance on Matter of Park v New York State Div. of Hous. & Community Renewal (150 AD3d 105 [1st Dept 2017], lv dismissed 30 NY3d 961 [2017]) and Todres v W7879, LLC (137 AD3d 597 [1st Dept 2016], lv denied 28 NY3d 910 [2016], supra) for its result is misplaced. Todres was a straightforward fraud case where the court found that there was no fraudulent deregulation scheme; it did not involve an impermissible deregulation of the apartment during the landlord's receipt of J-51 tax benefits. Matter of Park illustrates a situation in which an apartment might have been improperly deregulated, but because of an intervening vacancy, the tenant asserting the overcharge had no standing to do so.
Taylor is not only completely harmonious with those cases, it also builds on principles this Court first explored in Lucas (101 AD3d 401), an even earlier case. Lucas was a Roberts overcharge case that involved an apartment's ongoing status as rent-regulated. The landlord in Lucas claimed that the IAIs were the reason for the rent's precipitous jump to more than $2,000 and its luxury deregulation. This Court rejected the application of CPLR 213-a's four-year look back period "in light of the improper deregulations of the apartment and given that the record does not clearly establish the validity of the rent increase that brought the rent-stabilized amount over $2,000" (Lucas, 101 AD3d at 402). Lucas remains viable and, contrary to the majority's analysis, neither Grimm nor Boyd affect its authority. Lucas is a Roberts overcharge case, not a fraud/fraudulent scheme case, so the Grimm analysis was not implicated, and Boyd involved an overcharge case not premised on Roberts luxury deregulation.
In sum, although the landlord's overcharge was not willful, and penalties are not warranted is this case, the tenants' recovery of the base amount of the rent overcharge is their actual, compensatory damages (see Borden, 24 NY3d at 389). Permitting a base rent fixed as a [*13]market rent would render Roberts and its progeny a nullity. This is not a policy-driven result, as the majority suggests, but warranted by a full and proper application of the applicable rent stabilization laws as interpreted by the courts of this State.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 16, 2018
CLERK



Footnotes

Footnote 1: See Administrative Code of City of NY § 11—243(formerly § J51—2.5). The City's "J—51" program, authorized by Real Property Tax Law § 489, allows property owners who complete eligible projects to receive tax exemptions and/or abatements that continue for a period of years (see Administrative Code § 11—243[b][2], [3], [8]; 28 RCNY 5—03[a]).

Footnote 2:By contrast, landlord contends that had the RA calculated the overcharge using its method, the overcharge would have been $10,776.50, plus interest.

Footnote 3:Tenants' reliance on RPL § 234 in support of their argument for attorneys' fees is misplaced. That provision does not apply to an administrative proceeding before DHCR (Paganuzzi v Primrose Mgt. Co., 268 AD2d 213 [1st Dept 2000]).

Footnote 4:In setting the base date rent, the Court held that it was not arbitrary and capricious for DHCR to use the default formula that it employs when reliable records are unavailable (Thornton, 5 NY3d at 181). In Grimm, the Court stated that its holding should not be construed to mean "that the default formula should be used in this case," only that "DHCR acted arbitrarily in disregarding the nature of petitioner's allegations and in using a base date without, at a minimum, examining its own records to ascertain the reliability and the legality of the rent charged on that date" (15 NY3d at 366-367).

Footnote 5:I agree, however, with the majority on the collateral issues of penalties and attorneys' fees.

Footnote 6: In New York City, multiple dwellings may qualify for tax incentives designed to encourage rehabilitation and improvements (see Administrative Code NY § 11-243 [formerly § J51-2.5]). The City's J-51 program, authorized by Real Property Tax Law § 489, allows property owners who complete eligible projects to receive tax exemptions and/or abatements that continue for a period of years (see Administrative Code § 11-243[b][2], [3], [8]; 28 RCNY 5-03[a]). Rental units in buildings receiving these exemptions and/or abatements must be registered with the Division of Housing and Community Renewal (DHCR), and are generally subject to rent stabilization for at least as long as the J-51 benefits are in force (see 28 RCNY at 5-03[f]).

Footnote 7:Taylor was issued a year later, on May 25, 2017.

Footnote 8:The majority, citing Matter of 160 E. 84th St. Assoc. (160 AD3d 474), asserts that the DHCR is not limited to calculating a base date rent according to the market rate charged, but does not explain how under its interpretation of the relevant statutes that is possible. Moreover, the sampling method referred to in Matter of 160 E. 84th St. Assoc. is typically used where, because of fraud or other circumstances, the registered rental history for the subject apartment is unavailable or unreliable, which is not the situation here (see Rent Stabilization Code [9 NYCRR] § 2522.6[b][2]; Thornton v Baron, 5 NY3d 175, 181 n 5 [2005]).

Footnote 9:The Court of Appeals reversed this Court (110 AD3d 594 [1st Dept 2013]) and reinstated the judgment of Supreme Court, New York County (2012 NY Slip Op 31260[U]). The Supreme Court's and this Court's decisions provide useful facts not articulated in the Court of Appeals' decision.