41-47 Nick LLC v Odumosu (2024 NY Slip Op 24167)

[*1]

41-47 Nick LLC v Odumosu

2024 NY Slip Op 24167

Decided on June 11, 2024

Civil Court Of The City Of New York, New York County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on June 11, 2024
Civil Court of the City of New York, New York County

41-47 Nick LLC, Petitioner,

against
Peter Odumosu, Respondent.

Index No. 320222-22

Todd Rothenberg, Esq., for the petitioner 
Manhattan Legal Services (Kirsten Zambrano, Law Graduate, supervised by Erica Braudy, Esq. pursuant to 9 NYCRR § 524.3), for the respondent

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos: 27-39.
PROCEDURAL POSTURE AND BACKGROUND
This is a nonpayment proceeding commenced on December 29, 2022. (NYSCEF Doc No. 1, petition.) It is not disputed that Peter Odumosu ("respondent") is a senior citizen who has resided in the apartment since May 1997. The apartment is registered as rent stabilized, and from the petition it appears that the rent charged is $1,845.11. (Id. ¶¶ 6-7.) Respondent filed an answer to the proceeding without counsel on March 2, 2023. (NYSCEF Doc No. 4.) On May 11, 2023, respondent appeared by an attorney through the Universal Access to Counsel program ("UAC"); an amended answer (as permitted pursuant to the court's May 11, 2023 order) was filed on June 9, 2023. (NYSCEF Doc No. 7, amended answer.) The amended answer asserted numerous defenses including fraudulent overcharge. The answer also included the following counterclaims: treble damages due to a fraudulent overcharge; an order requiring petitioner to offer respondent a valid rent stabilized lease at the correct legal rent; damages for breach of the warranty of habitability; an order to correct; and attorney's fees.
Previously, respondent moved for leave to conduct discovery pursuant to CPLR 408, reaching back as far as 1993, regarding his first defense and counterclaim related to an alleged fraudulent overcharge.[FN1]
Respondent argued that he had interposed a colorable claim of a [*2]fraudulent overcharge by demonstrating indicia of same, and, thus, respondent should be permitted to discover and inspect documents ranging from 1993 to present "based upon many fraud factors and irregularities captured in the [DHCR] rent history . . . ." (NYSCEF Doc No. 10, respondent's attorney's affirmation ¶ 11.) Respondent's attorney argued that respondent had met all of the factors generally considered by the court when determining motions for discovery including "a meritorious fraudulent overcharge claim" and that he has "[a] need for [the requested] documents since they are crucial to his case, and the documents cannot be easily obtained elsewhere." (Id. ¶¶ 32, 48.)
Citing to Burrows v 75-25 153rd St., LLC, 215 AD3d 105 (1st Dept 2023), petitioner argued that respondent had failed to sufficiently plead the common law elements of fraud as required by Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332 (2020).[FN2]
The Burrows court dismissed a fraudulent overcharge claim as the tenants had failed to allege "a fraudulent scheme to deregulate" stemming from an "unlawfully inflated 'legal regulated rent' . . . so as to avoid the bar of the four-year lookback rule and to allow recalculation of the legal rent on the base date [] utilizing the default formula referenced in Regina, as a basis for overcharge damages." (Burrows, 215 AD3d at 109.) After New York courts almost universally agreed that common law fraud must be properly pleaded, Burrows held that the element of justifiable reliance could not be established "as a matter of law" if public records, specifically the DHCR rent registration history, could be examined to reveal a representation of fact upon which a tenant claiming a fraudulent scheme to deregulate could not have justifiably relied. (Id.) Burrows went so far as to apply this standard to current and predecessor tenants. After Burrows  disregarding the fact that DHCR rent registration histories are not available to tenants until after they sign the lease  claims of fraud were eliminated at the pleading stage because "disclosure in the publicly available rental histories of the discrepant figures for legal regulated rent and preferential rent negates any inference of fraud as a matter of law (emphasis added)."[FN3]
(Burrows at 113.) Burrows transformed the subjective element of justifiable reliance, not susceptible to dismissal before trial,[FN4]
into an objective, bright-line rule [*3]applied in this context to proceedings involving parties of unequal sophistication and bargaining power.
With reservations, the court followed the holding in Burrows, as respondent had acknowledged that his "fraudulent overcharge allegation is based upon many fraud factors and irregularities captured in the [DHCR] rent history and in other publicly available records for the subject apartment." (41-47 Nick LLC v Odumosu, 81 Misc 3d 772, 776 [Civ Ct, New York County 2023].) Applying Burrows, petitioner argued that respondent could not establish justifiable reliance as a matter of law. Upon reargument, the court held that it had not overlooked any relevant facts or law proffered with the original motion. (NYSCEF Doc No. 25, decision and order dated November 15, 2023.)
Pursuant to CPLR 2221,[FN5]
respondent has moved to renew the court's prior decisions which followed the holding in Burrows, and adhered to its determination upon reargument.[FN6]
The motion to renew is based on the same answer, a third affidavit, and the passage of "new legislation . . . which [respondent argues] modifies the fraud exception under pre-Housing Stability and Tenant Protection Act ("HSTPA") law, L 2023, ch 760, Amended L 2024, ch 95, and explicitly state[s] that fraud should not be considered under the Burrows 'common law' fraud definition, but instead the courts must consider the 'totality of the circumstances' to determine whether fraud was present in an overcharge." (NYSCEF Doc No. 27, respondent's attorney's affirmation ¶ 27.)
APPLICABLE LAW AND ARGUMENTS
Applicable Law
Burrows was issued on April 13, 2023. It is reasonably certain that the legislature acted swiftly in direct response to Burrows, "to retroactively redefine 'fraud' in the context of pre-HSTPA claims . . . ."[FN7]
On June 20, 2023, just two months after Burrows was handed down, the Senate passed a bill which had previously been passed by the Assembly. On December 23, 2023, Governor Hochul signed into law Chapter 760 of the Laws of New York of 2023, which took effect immediately, and which stated that:
"With respect to the calculation of legal rents for the period either prior to or [*4]subsequent to June 14, 2019, an owner shall be deemed to have committed fraud if the owner shall have committed a material breach of any duty, arising under statutory, administrative or common law, to disclose truthfully to any tenant, government agency or judicial or administrative tribunal, the rent, regulatory status, or lease information, for purposes of claiming an unlawful rent or claiming to have deregulated an apartment, whether or not the owner's conduct would be considered fraud under the common law, and whether or not a complaining tenant specifically relied on untruthful or misleading statements in registrations, leases, or other documents (emphasis added). The following conduct shall be presumed to have been the product of such fraud: (1) the unlawful deregulation of any apartment, including such deregulation as results from claiming an unlawful increase such as would have brought the rent over the deregulation threshold that existed under prior law, unless the landlord can prove good faith reliance on a directive or ruling by an administrative agency or court . . . ." (L 2023, ch 760, Part B, § 2 (b).)
Just as many believed that Burrows had gilded the lily, many believed the new law overreached and would pose the same kind of constitutional retroactivity questions that arose in the wake of Regina.[FN8]
On March 1, 2024, after debate on the Senate floor,[FN9]
the Governor signed into law Senate Bill 8011/Assembly Bill 8506 (the "Chapter Amendments"), which, inter alia, amended Section 2 of Part B of Chapter 760 the Laws of 2023. The following amendment is relevant herein:
"2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction or the state division of housing and community renewal, a court of competent jurisdiction or the state division of housing and community renewal shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances (emphasis added).
In making such determination, the court or the division shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless [*5]indicate that such fraudulent scheme to deregulate a unit was committed (emphases added)." (L 2024, ch 95, § 4.)
The Chapter Amendments "shall take effect immediately and shall apply to any action or proceeding in any court or any application, complaint or proceeding before an administrative agency on the effective date of this act." (Id, § 5.) Thus, the amended version is effective as of December 22, 2023, the date the Governor signed the original bill into law.
Petitioner poses no new facts have come to light (and if any have been argued, then respondent has not explained why they were not raised previously). Thus, the only question before this court is whether the change in the law affects this court's prior determinations. (NYSCEF Doc No. 32, petitioner's attorney's affirmation in opposition ¶ 23.) The court agrees.
Oral argument was held on the record on May 31, 2024.
Arguments
Respondent argues that the Chapter Amendments provide safe harbor from the "rule" espoused in Regina that a tenant must plead common law fraud in order to establish a fraudulent scheme to deregulate or a fraudulent scheme to overcharge a tenant. Specifically, respondent argues that L 2023, ch 760, as amended by L 2024, ch 95, § 4,
"unequivocally modifies prior law governing the fraud exception under pre-HSTPA law by rejecting footnote 7 of the decision in Regina and any inference that a common law fraud standard is required by providing that 'there need not be a finding that all of the elements of common law fraud . . . were satisfied.' Instead, the new law requires a court to review the 'totality of the circumstances' to determine whether a landlord knowingly engaged in a fraudulent scheme to deregulate. Under this new standard, if the totality of the circumstances indicate that a landlord knowingly engaged in a fraudulent scheme, no finding of justifiable reliance is necessary. As such, this Court is no longer bound by Burrows in the instant case because the totality of the circumstances indicate a fraudulent scheme (emphasis added)." (NYSCEF Doc No. 27, respondent's attorney's affirmation ¶¶ 39-41 [internal footnote, citations, and paragraph references omitted].)
Based on its interpretation of L 2024, ch 95, § 4, petitioner proposes an argument which it did not previously articulate. Here, petitioner argues that each incarnation of the L 2023, ch 760, Part B, § 2 (b) further removed the word "overcharge" from the text until it ceased to exist in the text of L 2024, ch 95, § 4. Petitioner contends that it is clear from the legislative history and the plain language of the new law that it applies only to overcharges in the context of fraudulent deregulation schemes, and not to overcharges where no significant indicia of a fraudulent scheme to deregulate a premises is extant. (Id. ¶ 10; NYSCEF Doc No. 33, petitioner mem of law at 2.) Citing to Conason v Megan Holding, LLC, 25 NY3d 1 (2015)  the most recent of the three pre-HSTPA Court of Appeals decisions cited by Regina as forming "[t]he rule that . . . under the [pre-HSTPA] law, review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate," Regina at 355, petitioner argues:
"It is well settled that the sole exception to strict application of the four-year rule [to overcharge claims] is triggered when the tenant proves that the landlord engaged in a 'fraudulent scheme to deregulate' (i.e., a fraudulent scheme to remove the apartment from rent regulation). Regina, 35 NY3d at 354-56; Conason v Megan Holding, LLC, 25 NY3d [*6]1, 16 (2015) (fraud involves 'the setting of an illegal rent in connection with a stratagem devised by [the landlord] to remove tenants' apartment from the protections of rent stabilization . . . .'") (NYSCEF Doc No. 33, petitioner mem of law at 5.)
Thus, petitioner advances, respondent cannot claim fraudulent overcharge as respondent has not evinced a prior fraudulent scheme to evade the rent stabilization laws and remove the premises from regulatory protections. It follows, petitioner contends, that respondent cannot invoke the default formula to calculate an overcharge award. Under pre-HSTPA law, in the absence of fraud, "the base date rent [is] the rent actually charged on the base date—i.e., four years prior to the overcharge complaint—even if no registration statement had been filed reflecting that rent." (NYSCEF Doc No. 33 at 5, petitioner's mem of law; Regina at 354.)
Significantly, while maintaining the position that neither Regina nor the L 2024, ch 95, § 4 applies to claims of a fraudulent overcharge absent a fraudulent deregulation stratagem, petitioner does concede respondent's argument that the evidentiary standard for pleading and proving fraud in the context of rent regulation has changed, to wit:
"[r]ecently enacted New York State legislation modified the evidentiary burden applicable to a tenant alleging an unlawful rent. Instead of establishing the common-law elements of fraud, the legislation provides that . . . the court is required to consider the 'totality of the circumstances' in making its determination (emphasis added)." (NYSCEF Doc No. 33, petitioner mem of law at 2.)
Petitioner acknowledges the change in the law and the difference between the new standard for determining fraud and the pre-L 2024, ch 95, § 4 heightened standard: "Although the legislature has clarified that the tenant is not required to satisfy the common law elements of fraud when establishing that the landlord engaged in a fraudulent scheme to deregulate, expanding the four year look back rule is still a drastic remedy." (Id. at 5.)
Regardless, petitioner contends, "under any theory of fraud and/or a totality of the circumstances there is no basis to vacate the Order and [r]espondent's motion should be denied (emphasis added)." (Id. at 4.) Petitioner takes the position that "[t]he recent legislation did not modify the four-year rule. . . . [I]t only clarified the standard for establishing the fraud exception thereto." (Id. at 5.) Petitioner argues that because there has been no fraudulent deregulation of the premises, and respondent has at all times during his 30-year tenancy enjoyed the protections of the rent stabilization laws at a rent far below the deregulation threshold in effect at any given time, a fraudulent scheme to deregulate does not exist; therefore, the default formula may not be utilized to calculate an overcharge. (Id.)
The thrust of petitioner's argument is that employing the default formula to calculate an overcharge is a punitive remedy which should be employed sparingly, i.e. only where it can be shown that the petitioner knowingly engaged in a fraudulent scheme to deregulate a premises resulting in a fraudulent overcharge. Petitioner points to the egregious nature of the landlord's knowing actions in Thornton v Baron, 5 NY3d 175 (2005), Matter of Grimm v New York State Div. of Hous. & Community Renewal Off. of Rent Admin., 15 NY3d 358 (2010), and Conason v Megan Holding, LLC, 25 NY3d 1 (2015), as evidence that the courts require a willful, knowing fraudulent scheme, albeit under a less exacting standard that purportedly espoused in Regina and [*7]its progeny.[FN10]

In reply, respondent doubles down, postulating that it "is explicit that under its new standard, common law fraud is not required (emphasis added)." (NYSCEF Doc No. 39, respondent's attorney's affirmation in reply ¶ 19.) Respondent quotes from the introduction of the Chapter Amendments in which the bill's sponsor declared that the "'ACT [] amend[s] . . . part B of a chapter of the laws of 2023 relating to defining clearly the scope of the fraud exception to the pre-HSTPA four-year rule for calculating rents . . . in relation to claims of fraudulent schemes and determination relating thereto . . . 2024 NY Senate Bill S-08011' (emphasis added)." From this, respondent concludes that it is clear from the legislative purpose section of the Chapter Amendments that the law is meant to apply to both fraudulent schemes to overcharge in the absence of deregulation, as well as to claims of fraudulent overcharge related to fraudulent schemes to deregulate. Respondent advances that "[t]he Legislature's use of the plural word 'schemes,' and inclusion of 'determination relating thereto,' evidences an intent for the new law to apply, as the pre-HSTPA law did, to both fraudulent deregulation and fraudulent overcharge claims "as they often go hand in hand." (Id.)[FN11]

Respondent further argues that petitioner misapprehends the procedural posture of this case. Respondent argues that because this is a pre-trial motion to renew a determination that respondent was not entitled to discovery, he need not prove knowingness at this juncture, and that based on the new law, respondent is entitled to discovery reaching back to 1993 based on a properly pleaded fraudulent overcharge claim alone. (Id. ¶ 15.)
DISCUSSION
Whatever the power of the legislature to discredit Burrows, and whatever its authority to define what is meant by pre-HSTPA Court of Appeals caselaw — specifically, the seminal trilogy of Thornton, Grimm, and Conason — those issues are not before this court. The court's function is to interpret the relevant Chapter Amendment as it applies to the facts before it. Petitioner agrees that the Chapter Amendments have import and effect but proposes that under any standard  whether the heightened standard for pleading and proving "common law fraud," or the qualitative "totality of the circumstances" test  respondent's fraudulent overcharge claim must fail.
Accordingly, the question for this court regarding that branch of respondent's motion to renew is whether a fraudulent overcharge claim can exist exclusive of an attendant claim of a fraudulent scheme to subvert the rent stabilization law by removing an apartment from deregulation. If so, the respondent may be entitled to discovery. If not, then respondent has failed [*8]to plead a cause of action or a colorable claim upon which to grant respondent's motion.[FN12]
The court answers this question in the negative, and to do so, necessarily must interpret the L 2023, ch 760, as amended L 2024, ch 95, and the cases to which the law and Regina refer.
Fraudulent Deregulation and Fraudulent Overcharge in the Absence of Fraudulent Deregulation
Respondent's argument that a fraudulent overcharge claim can be raised in the absence of a fraudulent scheme to deregulate a premises is not supported by pre-HSTPA case law. This argument goes beyond the Chapter Amendments,[FN13]
and the jurisprudence of the Court of Appeals in Thornton, Grimm, Conason, and Regina.
In Thornton, the Court of Appeals upheld the Appellate Division which had affirmed the Supreme Court's use of the default formula to calculate a fraudulent overcharge. In Thornton, a lease for a formerly rent stabilized apartment was signed by an individual who never resided in the apartment as part of a scheme in collusion with the landlord to rent the apartment for a significant profit. The Court viewed these acts as "an attempt to circumvent the Rent Stabilization Law in violation of the public policy of New York[.]" (Thornton, 5 NY3d at 181.)
In Grimm, the Court espoused that fraud could be determined from "evidence of [the] landlord's fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization." (Grimm, 15 NY3d at 367.) Grimm, quoting Thornton, defined the default formula as "the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the relevant base date." (Grimm, 15 NY3d at 366, n 1.) In 2013, DHCR amended Section 2522.6 of the Rent Stabilization Code, to state that when, inter alia, the base date rent "is the product of a fraudulent scheme to deregulate the apartment,"[FN14]
the base date rent is to be "established at the lowest of" four different options, including "the lowest rent registered for a comparable apartment in the building in effect on the date the complaining tenant first occupied the apartment . . . ." (9 NYCRR 2522.6 [b] [3] [i].) [FN15]
,[FN16]

In Conason, the plaintiff commenced an overcharge proceeding against the landlord. The plaintiff had moved into the apartment pursuant to a non-rent stabilized lease at a monthly rent of $1,800, and which indicated the legal regulated rent was $2,000 due to a temporary rent concession rider. Prior to the plaintiff's tenancy, the landlord had created a fictitious tenant and increased the regulated rent from $475.24 to $1,800, based on a fictitious renovation of the apartment. In a prior nonpayment proceeding between the same parties, the Housing Court found that the base date rent was tainted by the landlord's fraudulent acts of creating the fictitious tenant and increasing the rent based on a fictitious renovation. Nevertheless, Housing Court dismissed the rent overcharge complaint without prejudice because the tenant did not evince facts necessary to determine the lowest rent charged for a comparable apartment in the building on the base date in order for the court to apply the default formula. The Supreme Court overcharge complaint was then filed by the tenant. The Conason Court found that the tenants therein "[did] not just make a generalized claim of fraud. They instead advance a colorable claim of fraud within the meaning of Grimm—i.e., tenants alleged substantial evidence pointing to the setting of an illegal rent in connection with a stratagem devised by [the landlord] to remove tenants' apartment from the protections of rent stabilization (internal citations omitted) (emphasis added)[.]" (Conason, 25 NY2d at 16.) In other words, based on the unlawful increase, the apartment was on the precipice of inevitable deregulation. The Conason Court held that, "in light of Thornton and Grimm, Supreme Court in this case properly considered tenants' counterclaim alleging rent overcharges notwithstanding the expiration of the statute of limitations to which such claims are generally subject (internal citation omitted)." (Id.)
From the foregoing pre-Regina decisions and RSC provisions, it is clear that the Court ofAppeals contemplated that a fraudulent overcharge must be rooted in a fraudulent scheme to remove an apartment from regulation. However, certain egregious fact patterns will lend themselves to a finding of fraud in the absence of actual deregulation, or at least raise a question of fact as to whether fraud occurred which requires further investigation even when a unit has not been deregulated. For example, in 435 Central Park West TA v Park Front Apartments, LLC, 183 AD3d 509 (1st Dept 2020), cited by respondent for the proposition that there can exist fraudulent overcharge claims calculated from a base date rent set by the default formula that is not based on a fraudulent scheme to "remove [an apartment] from the protections of rent stabilization[,]" the court denied summary judgment to the landlord on the basis that an issue of fact existed as to whether it had engaged in a fraudulent building-wide scheme, tampered with the program recertification process, and pressured and misled numerous tenants in a 120-unit, federally subsidized complex in order to fraudulently raise the initial rent stabilized rent upon cessation of federal oversight. The enormity of a scheme to remove numerous federally [*9]subsidized affordable apartments from regulation at once is plainly one of those fact patterns.[FN17]

In Pehrson v Div. of Hous. & Cmty. Renewal of State, 34 Misc 3d 1220 (A), 2011 NY Slip Op. 52487 (U) (Sup Ct, New York County 2011), an Article 78 proceeding challenging a decision by DHCR that the landlord had not engaged in fraud and denying an overcharge complaint, the Supreme Court found that the facts and circumstances alleged by the tenant "support[ed] the requisite factors set forth in Grimm [and] trigger[ed] DHCR's duty to ascertain whether those allegations of fraud in the record, in turn, warrant[ed] the use of the default formula in calculating any rent overcharge . . . ." (Pehrson, 2011 NY Slip Op. 52487 (U), *2.) The Pehrson court set out three categories of actions set forth in Grimm which together can demonstrate sufficient indicia of fraud, to wit:
"(1) The tenant alleges circumstances that indicate the landlord's violation of the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC) in addition to charging an illegal rent. (2) The evidence indicates a fraudulent scheme to remove the rental unit from rent regulation. (3) The rent registration history is inconsistent with the lease history." (Id.)
Applying these factors, the Supreme Court found that "the evidence in the record establishes a colorable claim of the landlord's fraud." The proceeding was remanded to DHCR to calculate the tenant's overcharge. As is relevant here, DHCR calculated the rent using the default formula and the landlord filed an Article 78 proceeding. The Supreme Court endorsed DHCR's determination. On appeal, the Appellate Division, First Department held that the Supreme Court had
"properly upheld DHCR's determination that the inclusion of a fraudulent nonprimary residence rider in the tenants' initial lease rendered it a legal nullity and required that the base date rent, for purposes of calculating the rent overcharge, be arrived at using the 'default method'. . . ." (215 W 88th St. Holdings LLC v New York State Div. of Hous. & Cmty. Renewal, 143 AD3d 652, 652 [1st Dept 2016].)
Whether courts adhere to the heightened "common law" fraud standard for pleading and proving fraud purportedly espoused in Regina, or whether we consider the totality of the circumstances when determining whether respondent has raised a colorable claim of fraud,[FN18]
a fraudulent scheme or strategy to evade the law must first be discernable. As stated by the Supreme Court recently in Montera v KMR Amsterdam LLC, 2024 NY Slip Op 31883 (U), *4-5 [*10](Sup Ct, New York County 2024), upon remittitur from the Appellate Division:
"In the event the rent being charged to [a] tenant is determined to be the product of a fraudulent scheme to deregulate the apartment, the default formula is then employed to calculate the rent on the base date. . . . [T]he issue of fraud must be determined before the issue of overcharge can be addressed, as a finding of fraud will necessitate the application of the default method (emphasis added)." (Id. at 4.)
Here, respondent has neither pleaded a common law fraudulent scheme to deregulate his apartment, nor raised a colorable claim of a fraudulent stratagem to remove his apartment from the protections of the law. In fact, respondent's apartment has never teetered close to any deregulation threshold, and, with the passage of the HSTPA, with very limited exceptions, respondent's apartment can no longer be deregulated.
Order to Correct and Contempt
In his amended answer, respondent counterclaims for an order to correct alleged "conditions" that exist in the premises, to wit, "[b]ased upon the conditions set forth above, [r]espondent is further entitled to an Order from this Court, pursuant to the provisions of NYC Civil Court Act §110 (c), directing Petitioner to correct the aforesaid conditions." (NYSCEF Doc No. 7, amended answer ¶ 46.)
Respondent's answer does not put petitioner on notice of specific violations, if any, nor the statutory time-frame for correction of same. The stipulation comprised a list of alleged conditions to be repaired which petitioner "agree[d] to inspect, repair and/or replace" with no specific deadline. (NYSCEF Doc No. 15, stipulation dated July 13, 2023, ¶ 4.) This is hardly an unequivocal order of the court which petitioner has disobeyed. (See Chambers v Old Stone Hill Road, 77 AD3d 944 [2d Dept 1009]; Michetti v Wilson, 9 Misc 3d 138 [A] [App Term, 2d & 11th Jud Dists, 2005] [finding "inspect and repair as legally required" to be equivocal]; Banana Kelly Prospect HDFC v Banks, 2024 NY Slip Op 50681 [U] [Civ Ct, Bronx County 2024].) Moreover, as petitioner points out, respondent's motion does not contain on its face the "warning" required by Judiciary Law § 756. Specifically, respondent's motion did not inform petitioner as follows: "YOUR FAILURE TO APPEAR IN COURT MAY RESULT IN YOUR IMMEDIATE ARREST AND IMPRISONMENT FOR CONTEMPT OF COURT."
CONCLUSION
Accordingly, it is
ORDERED that respondent's motion to renew the court's prior orders is GRANTED; and it is further
ORDERED that upon consideration of the parties' submissions, renewal is DENIED as the L 2023, ch 760, Part B, § 2 (b), as amended by L 2024, ch 95, § 4, does not change the determination of this court to deny respondent's motion for leave to conduct discovery; and it is further
ORDERED that the branch of respondent's motion for an order to correct and contempt is DENIED.
The court directs petitioner to serve and file this decision and order with notice of entry on respondent. The parties are to appear in Part G, Room 509 of the Kings County Housing Court on July 15, 2024 at 9:30 for all purposes, including settlement or trial.
This constitutes the decision and order of this court.
DATED: June 11, 2024
__________________________________
KAREN MAY BACDAYAN, JHC

Footnotes

Footnote 1:Specifically, respondent seeks the following: "[1] All leases and lease riders for the subject apartment for the years 1993 to the present, including a complete copy of Respondent's lease and all documents executed in connection therewith. [2] All rent records, including ledger books or computer records, showing rents charged and/or paid for the subject apartment for the years 1993 to present. [3] All documents concerning rent for the subject premises from 1993 to the present, including but not limited to: vacancy increases, renewal increases, Major Capital Improvement ("MCI") increases and Individual Apartment Improvement ("IAI") increases. These documents shall include all bills, canceled checks, contracts, and similar documents concerning any alleged improvements in the subject apartment." NYSCEF Doc No. 14 at 5, proposed document demands.
Footnote 2:"Fraud consists of evidence [of] a representation of material fact, falsity, scienter, reliance and injury (internal quotation marks and citations omitted)." Regina, 35 NY3d 332, 356, n 7.
Footnote 3:The Burrows reasoning eschews the general principle that a party "must take [] reasonable steps to protect itself against deception [and] requires a plaintiff claiming [fraud] . . . to allege that, before entering into the transaction, it availed itself of the opportunity to verify the [other party's] representations[.]" Basis Yield Alpha Fund Master v Morgan Stanley, 136 AD3d 136, 141-142 (1st Dept 2015) (emphasis added).
Footnote 4:Brunetti v Musallam, 11 AD3d 280, 281 (2d Dept 2004). In Brunetti, the Appellate Division, Second Department reversed the trial court, finding that the court erred in dismissing the proceeding on summary judgment. "[T]he motion court should not have resolved factual issues by determining, based on this record, that defendants established as a matter of law that plaintiff could not prove all the elements of his fraud claim. The issues of material misrepresentation and reasonable reliance, essential elements of a fraud claim, are not subject to summary disposition." Id. (internal citations omitted); see also Ventur Group, LLC v Finnerty, 68 AD3d 638, 639 (1st Dept 2009) (standing for the proposition that a sophisticated party cannot allege it entered into a transaction by justifiably relying on alleged misrepresentations, where that party "failed to make use of the means of verification that were available to it (internal citation omitted).")
Footnote 5:A motion to renew "shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination[.]" CPLR 2221 (e) (2).

Footnote 6:Respondent also moves for an order to correct pursuant to New York City Civil Court Act § 110 (a), and a finding of contempt based on a stipulation of adjournment in which the petitioner agreed to "inspect, repair and/or replace as required by law" the following conditions: rodent infestation, leak in bathroom ceiling, water damage to bathroom ceiling. NYSCEF Doc No. 15, stipulation dated July 13, 2023, ¶ 4.

Footnote 7:Gary M. Rosenberg and Ethan R. Cohen, The 'Fraud Exception' Requires Fraud, NYLJ, Aug. 2, 2023, available online at https://www.law.com/newyorklawjournal/2023/08/01/the-fraud-exception-requires-fraud/ (last accessed June 6, 2024).
Footnote 8:See n 7.
Footnote 9:"We now follow in the footsteps of the Legislature, which passed the Rent Regulation Reform Act of 1997 and clarified the law on overcharges. These amendments make clear that Burrows is no longer good law, and are returned to the Thorton (sic), Grimm, Connison (sic) line of cases." Assembly Member Rosenthal, Transcript of Assembly Floor debate, page 33, available at https://www2.assembly.state.ny.us/write/upload/transcripts/2023/2-13-24.pdf#search="8011"; See also Assembly Mem in Support of 2023 Assembly Bill A6216, incorporated in L 2023, ch 760 ("This amendment will help clarify and codify the standard for applying a fraud exception to the four-year rule that was in place before HSTPA was enacted, in light of Burrows v. 75-25 153rd Street LLC." Assembly Mem in Support of 2023 Assembly Bill A6216, incorporated in L 2023, ch 760asdf asdf ; ¯ ¯

Footnote 10:The court will not consider petitioner's one-sentence constitutional challenge advanced in a footnote. Petitioner has not notified the Attorney General of its challenge. See CPLR 1012[b]); see also Harkenrider v Hochul, 38 NY3d 494, 509 (2022) ("Legislative enactments are entitled to a 'strong presumption of constitutionality' . . . .")

Footnote 11:The court notes that the legislature's use of the plural "schemes" could just as readily be interpreted to recognize that schemes to deregulate a premises come in many forms e.g. illusory tenancy, other conditional lease clauses, and raising a rent through the use of fictitious Individual Apartment Improvements in addition to other irregulaties in the registration history.
Footnote 12:In Housing Court, because a litigant must be able to demonstrate ample need for discovery related to a cause of action or defense, discovery regarding fraudulent overcharge claims is inextricably entwined with proper pleading. See New York Univ. v Farkas, 121 Misc 2d 643, 647 (Civ Ct, New York County 1983) ("In determining whether a party has established ample need for discovery, courts consider a number of factors, not all of which need be present in every case, including: (1) whether the movant has asserted facts to establish a claim or defense; (2) whether there is a need to determine information directly related to the claim or defense[.]"
Footnote 13:The court notes that the summary of Senate Bill S8011 states in relevant part that the amendment at issue here "relates to clearly defining the scope of the fraud exception to the pre-HSTPA four-year rule for calculating rents(.)"
Footnote 14:RSC 2522.6 (b) (2) (i)
Footnote 15:DHCR added additional methods not articulated in Thornton to calculate the base date rent using the default formula, including "(ii) the complaining tenant's initial rent reduced by the percentage adjustment authorized by section 2522.8 of this Code; or (iii) the last registered rent paid by the prior tenant; or (iv) if the documentation set forth in subparagraphs (i) through (iii) of this paragraph is not available or is inappropriate, an amount based on data compiled by the DHCR, using sampling methods determined by the DHCR, for regulated housing accommodations. RSC 2522.6 (3) (ii)-(iv).

Footnote 16:Other circumstances where the default formula is an appropriate mechanism to calculate an overcharge are situations where the base date cannot be determined, RSC 2522.6 (b) (2) (i); or where a the landlord engages in a practice prohibited by RSC 2525.3 (b), (c), and (d) related to conditional rentals and illusory tenancies.RSC 2522.6 (b) (iii).

Footnote 17:Montera v KMR Amsterdam LLC, 193 AD3d 102 (1st Dept 2021), cited by respondent as support for his position, cites to 435 Central Park West TA v Park Front Apartments, LLC, 183 AD3d 509 (1st Dept 2020), but itself involves alleged fraudulent deregulation. Respondent also cites to 3612 Broadway Partners LLC v Mejia, 79 Misc 3d 230 (Civ Ct, New York County 2023), as an example of a case in which a tenant's motion to amend their answer to assert fraudulent overcharge in the absence of significant indicia of fraudulent overcharge. The court notes that in this heavily litigated proceeding, petitioner never raised the issue.
Footnote 18:A colorable claim is a plausible legal claim. This means that the claim is "strong enough" to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court. See Cornell Law School, Legal Information Institute, available at https://www.law.cornell.edu/wex/colorable_claim#:~:text=colorable%20claim%20A%20colorable%20claim%20is%20a%20plausible,claim%20need%20not%20actually%20result%20in%20a%20win (last accessed June 11, 2024.)