208 Evergreen LLC v Gomez (2024 NY Slip Op 24202)

[*1]

208 Evergreen LLC v Gomez

2024 NY Slip Op 24202

Decided on July 23, 2024

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on July 23, 2024
Civil Court of the City of New York, Kings County

208 Evergreen LLC, Petitioner,

against
Fernando Gomez, WESLEY HAYNES, ET AL., Respondent.

Index No. LT-333843-23/KI

Edelman Schwartz, PLLC, for the petitioner 
Collins Dobkins Miller, for the respondent 

Karen May Bacdayan, J.

Recitation, as required by CPLR 2219 (a) of the papers considered in review of this motion by NYSCEF Doc Nos: 8-25.
PROCEDURAL POSTURE AND BACKGROUND
This is a summary nonpayment proceeding commenced against the unregulated tenants of record, Fernando Gomez and Wesley Haynes ("respondents"). (NYSCEF Doc No. 1, petition.) Petitioner seeks rent arrears accruing at the monthly rental amount of $3,200 (Id., ¶ 6.) Petitioner originally pleaded that the premises are not subject to rent regulation due to substantial rehabilitation of the property after January 1, 1974. (Id., ¶ 7.) A stipulation was later so ordered, in which the petition was amended to indicate that the premises was deregulated due to "high rent decontrol." (NYSCEF Doc No. 6, stipulation ¶ 7.)
Respondents filed an answer without the assistance of counsel alleging a general denial, breach of the warranty of habitability, and rent overcharge. (NYSCEF Doc No. 3, answer.) Thereafter, respondents retained counsel who filed an amended answer, without objection from petition. (NYSCEF Doc No. 7.) Respondents include in the amended answer that petitioner has not obtained a proper certificate of occupancy, and that respondents have been constructively evicted. Respondents also claim that of rent overcharge and add a counterclaim for an award of treble damages, as well as for attorney fees. Respondents have moved pursuant to CPLR 408 for leave to conduct discovery on their claim rent overcharge claim, reaching back in time to 2001. (NYSCEF Doc No. 8, notice of motion [sequence 1]; NYSCEF Doc No. 9, respondents' attorney's affirmation in support; NYSCEF Doc No. 10, Gomez affidavit.)
Petitioner opposes and cross-moves for use and occupancy pursuant to Real Property Actions and Proceedings Law ("RPAPL") § 745 (2). (NYSCEF Doc No. 17, notice of cross- motion [sequence 2].) In opposition to respondents' motion in chief, petitioner states that respondents are barred from seeking discovery beyond the base date because there is no evidence of fraud:
"[E]ven if the DHCR's rent registrations for the subject apartment are properly under [*2]review by this Court, such records do not provide evidence of fraud in this matter. See Grimm v DHCR, supra, 15 NY3d 358, 367, 912 NYS2d 491 (2010). The Court of Appeals in Grimm and Regina has expressly stated landlords are not required to provide documentation back beyond the base date unless the Respondent has produced evidence of a fraudulent scheme to deregulate. A large rent increase on its own is not evidence of fraud." (NYSCEF Doc No. 18, petitioner's attorney's affirmation ¶¶ 25-26.)
In addition to Regina Metro Co. LLC v State Div. of Hous. & Community Renewal, 35 NY3d 332 (2020), and Grimm v New York State Div. of Hous. & Community Renewal Off. Of Rent Admin., 15 NY3d 358 (2010), petitioner cites to Thornton v Baron, 5 NY3d 175 (2005), and argues that in Thornton "the Court of Appeals created the one and only exception to the 4-Year Interrelated Rule, i.e., a common law fraud exception where a fraudulent scheme to deregulate an apartment can be established." (Id., ¶ 27.) Petitioner also cites to Conason v Megan Holding, LLC, 25 NY3d 1 (2015), as creating the standard for piercing the base date. Nevertheless, petitioner seeks to have this court narrowly hold the definition of a "colorable claim" to the specific facts of those cases. (Id., ¶¶ 31, 33.) Petitioner further argues that it will be unduly burdensome to provide the documents demanded as the building changed hands several times before petitioner it was purchased by petitioner:
"Respondent seeks discovery dating back to 2001, more than 23 years ago yet fails to explain why these would be relevant. Petitioner only became an owner of the subject premises in 2013. According to ACRIS there have been four (4) prior owners since 2001. Thus, it is virtually impossible that Petitioner would be able to obtain any of the records requested. This is especially onerous in relation to Respondent's request for documents received 'by Petitioner from each former owner.'" (Id., ¶ 42.)
In reply, respondents advance that petitioner has ignored long-standing, controlling case law permitting discovery past the look-back period to determine regulatory status. (NYSCEF Doc No. 22, respondent's attorney's reply affirmation ¶ 3.)
The court gleans the following from the DHCR rent history: In 2002, the registered rent was $634.59. The subject premises was registered as vacant in 2003, and no registration was filed in 2004. In 2005, the apartment was registered for the 2004 registration year as vacant with the legal regulated rent amount missing and registered for the 2005 registration year with a rent of $1,003 due to a purported two (2) year vacancy lease that commenced October 1, 2004 and expired September 30, 2006. No registration was filed in 2006 or 2007; in 2008, the premises was registered for the 2007 registration year at $1,425 pursuant to a two (2) year lease with "D. Graves"  a different tenant than the one registered in 2005 for the lease at $1,003  which commenced July 15, 2005 and expired July 14, 2007. The apartment was not registered for the 2008 registration year. In 2009, the premises was registered as vacant with a rent of $0.00. In 2010, the premises was registered as "EXEMPT" due to a high rent vacancy and with "VAC/LEAS — IMPRVT" listed as the reason for the difference. In 2011, the premises was registered as "EXEMPT APARTMENT — REG NOT REQUIRED." In 2012, the apartment was registered as rent stabilized with a rent of $2,400, $100 below the deregulation threshold in effect at the time. Thereafter, no registration statement was ever filed. (NYSCEF Doc No. 13, respondent's exhibit C, DHCR rent history.)
Respondents argue in their motion for discovery that because 2001 was "the last time that [*3]the DHCR registrations are reliable," there is ample need to review the rent history back to 2001. (NYSCEF Doc No 22, respondent's attorney's reply affirmation ¶ 10.)[FN1]
Respondents further justification for leave to demand documents from 2001 is that they need to know how the increases from 2001 were calculated to determine the validity of petitioner's claim that the premises were lawfully deregulated in 2010. (Id.)
Notably, neither petitioner nor the respondents address the Chapter Amendments, L 2023, ch 760, as amended by L 2024, ch 95, § 4, despite the fact that the new law was in effect at all times during litigation of the motions before the court. While petitioner cites to Regina, it is only to argue that Regina follows Thornton, Grimm, and Conason. In so doing, petitioner implicitly accepts that the relevant Chapter Amendment has returned us to a standard of pleading fraud explicated in the foregoing controlling authorities, a standard that is notably distinct "in the regulatory context."[FN2]
Regardless, petitioner does not invoke the argument that respondents are required to plead with specificity the elements of a common law fraud claim, and that they have failed to meet this heightened standard.
DISCUSSION
Applicable Law
On March 1, 2024, after debate on the Senate floor,[FN3]
the Governor signed into law Senate [*4]Bill 8011/Assembly Bill 8506 (the "Chapter Amendments"), which amended Section 2 of Part B of Chapter 760 of the Laws of 2023. The following amendment is relevant herein:
"2-a. When a colorable claim that an owner has engaged in a fraudulent scheme to deregulate a unit is properly raised as part of a proceeding before a court of competent jurisdiction or the state division of housing and community renewal, a court of competent jurisdiction or the state division of housing and community renewal shall issue a determination as to whether the owner knowingly engaged in such fraudulent scheme after a consideration of the totality of the circumstances (emphases added).
In making such determination, the court or the division shall consider all of the relevant facts and all applicable statutory and regulatory law and controlling authorities, provided that there need not be a finding that all of the elements of common law fraud, including evidence of a misrepresentation of material fact, falsity, scienter, reliance and injury, were satisfied in order to make a determination that a fraudulent scheme to deregulate a unit was committed if the totality of the circumstances nonetheless indicate that such fraudulent scheme to deregulate a unit was committed (emphases added)." (L 2023 ch 760, Part B, § 2 (b), as amended by L 2024, ch 95, § 4.)
The Chapter Amendments "shall take effect immediately and shall apply to any action or proceeding in any court or any application, complaint or proceeding before an administrative agency on the effective date of this act." (L 2024, ch 95, § 5.) Thus, the amended version is effective as of December 23, 2023, the date the Governor signed the original bill (Chapter 760 of the Laws of 2023) into law.[FN4]

In order to raise a fraudulent overcharge claim, the Chapter Amendments require a tenant to "properly" raise "a colorable claim" of "a fraudulent scheme to deregulate a unit." (See 41-47 Nick LLC v Odumosu, 2024 NY Slip Op 24167, *9-10 [Civ Ct, New York County 2024].) This terminology  "a colorable claim" of fraud  has persisted in every iteration of the law prior to [*5]the Housing Stability and Tenant Protection Act ("HSTPA"),[FN5]
in Regina,[FN6]
and today.[FN7]
 "A colorable claim is a plausible legal claim. This means that the claim is 'strong enough' to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court."[FN8]
That the legislature chose to employ this deep-rooted diction should come as no surprise and requires little interpretation beyond the guidance provided in the controlling authorities of Thornton, Grimm, and Conason, cited favorably by the Regina Court in reaching its conclusion. The "requisite factors" of a properly raised colorable claim of fraudulent deregulation are cogently distilled from Grimm in Pehrson v Div. of Hous. & Community Renewal of the State of NY, 34 Misc 3d 1220 (A), 2011 NY Slip Op. 52487 (U) (Sup Ct, New York County 2011).
In Pehrson, the tenant filed an Article 78 proceeding to challenge DHCR's denial of an overcharge complaint. The Supreme Court found that the facts and circumstances alleged by the tenant "support[ed] the requisite factors set forth in Grimm [and] trigger[ed] DHCR's duty to ascertain whether those allegations of fraud in the record, in turn, warrant[ed] the use of the default formula in calculating any rent overcharge . . . ." Pehrson, 2011 NY Slip Op. 52487 (U), *2. The Pehrson court set out three categories of actions set forth in Grimm, which together can demonstrate sufficient indicia of fraud, to wit: "(1) The tenant alleges circumstances that indicate the landlord's violation of the Rent Stabilization Law (RSL) and Rent Stabilization Code (RSC) in addition to charging an illegal rent. (2) The evidence indicates a fraudulent scheme to remove the rental unit from rent regulation. (3) The rent registration history is inconsistent with the lease history." Id. Applying these factors, the Supreme Court found that "the evidence in the record establishes a colorable claim of the landlord's fraud." (Id.) Accordingly, that proceeding was remanded to DHCR as the obligation to investigate the fraud claim had been triggered.
The court finds that the Chapter Amendments are consistent with pre-Regina precedent, and with second sentence of Regina, footnote 7, which qualifies the first sentence.[FN9]
Accordingly, considering these controlling authorities and the law now in effect, the following principles can be extracted to govern the analysis of a claim of fraudulent overcharge:
There is no need for the legislature to pass a law stating that a tenant may look at the rent history as far back as necessary to determine the regulatory status of their apartment, as the law is well settled in this regard.[FN10]
However, when a tenant does raise a rent overcharge claim based upon a "properly raised" claim of a fraudulent deregulation, then a court, or DHCR, is bound to investigate whether fraud actually exists.[FN11]
If the court determines that  based on the totality of the circumstances  the landlord did, in fact, engage in a fraudulent scheme to deregulate the unit in contravention of public policy, then the court may turn its attention to calculation of damages.[FN12]
If the landlord does not rebut the presumption that it deliberately and intentionally overcharged the tenant, then the default formula is employed to calculate the overcharge award, if any, and the landlord is subject to treble damages.[FN13]
Moreover, petitioner's argument that Thornton and Grimm must be narrowly interpreted is belied by the decision in Conason, which relied on Thornton and Grimm. The Court of Appeals in Conason opined:
"[In Grimm,] DHCR argued that Thornton should be limited to 'the narrow set of circumstances described in that case ... involving illusory tenancies.' We disagreed, and held that 'where the overcharge complaint alleges fraud ... DHCR has an obligation to ascertain whether the rent on the base date is a lawful rent,' and that DHCR had not met this obligation because 'there existed substantial indicia of fraud on the record,' yet DHCR 'blindly us[ed] the rent charged on the date four years prior to the filing of the rent [*6]overcharge claim'."(Conason, 25 NY3d 1 at 15 [emphasis added] [internal citations omitted].)
The Chapter Amendments are not as lawless a construct as many may fear. If the post-Regina, pre-L 2024, ch 95, § 4 jurisprudence teaches us anything, it is that properly raising a colorable claim of fraudulent deregulation is of the utmost importance, not only to discourage baseless claims, but also to form a basis to conduct discovery reaching beyond the base date in order to further investigate a tenant's claim of fraudulent rent overcharge.[FN14]

Certain concepts are widely accepted and can be applied to claims of fraudulent overcharge to ameliorate the concern that parsing the construct of fraud in the regulatory context  embodied in the Chapter Amendments  will develop in the eyes of judges as a "feeling."[FN15]
For example, "a mere allegation of fraud alone, without more, will not be sufficient to require DHCR [or a court] to inquire further." (Grimm, 15 NY3d at 367.) Quantity is no substitute for quality, i.e., a tenant cannot simply list numerous speculative allegations in the hopes that a court or DHCR will conclude that fraud might exist.[FN16]
A cognizable claim must be specifically pleaded to put the landlord on notice of the transactions and occurrences that evince a fraudulent scheme to deregulate. (CPLR 3013; CPLR 3014.) A fraudulent scheme to deregulate will not be inferred solely from evidence of "an increase in rent and failure to register the apartment with [DHCR] . . . ." (Ampim v. 160 E. 48th St. Owner II LLC, 208 AD3d 1085, 1085-1086 [1st Dept 2022] [citing Grimm, 15 NY3d at 367 ["Generally, an increase in the rent alone will not be sufficient to establish a 'colorable claim of frau[.]'") The Perhson factors, set forth supra, provide additional guidance to courts regarding Grimm-like colorable claims of fraudulent deregulation.
Here the respondents' answer states,
"As and for a first defense: The apartment is subject to the Rent Stabilization Law. Petitioner has asserted that it is exempt due to "high rent decontrol". Upon information and belief, based upon the DHCR rent history, the apartment could not have been subject [*7]to "high rent decontrol." (NYSCEF Doc No. 7, amended answer ¶¶ 9-11 [internal paragraph numbering and capitalization omitted].)
Respondent further claims as a fifth defense and second counterclaim:
"The DHCR rent registration history is incomplete it is not possible to specify the amount of the correct legal regulated rent absent discovery. Upon information and belief the rent charged to Respondents ($3,200.00 per month) is in excess of the legal regulated rent. Under NYC Admin. Code §26-516(a) and (b), an owner cannot charge or collect any rent in excess of the Legal Regulated Rent." (Id. ¶¶ 26-28 [internal paragraph numbering and capitalization omitted].)
Respondents' amended answer is insufficient to properly raise a colorable claim of fraud. Nowhere does respondent even claim "fraud." [FN17]
Respondents have not specifically pleaded a claim that is "'strong enough' to have a reasonable chance of being valid if the legal basis is generally correct and the facts can be proven in court."[FN18]
Nor is the sparse affidavit submitted by respondents adequate to rehabilitate their answer. (NYSCEF Doc No. 10, Gomez affidavit.) Under the pre-HSTPA law, an overcharge resulting from improper, but not fraudulent, deregulation is limited by the standard lookback provisions. (Regina, 35 NY3d at 360 ["[A]n overcharge resulting from improper (but non-fraudulent) luxury deregulation warranted anything but the application of the standard lookback provisions."].) Regardless, it remains petitioner's burden to prove at trial that the deregulation of respondents' apartment was proper. (Ampim, 208 AD3d at 1086 ["To be sure, it will be defendant's burden at trial to show that the apartment was properly deregulated (internal citation omitted)."]) This alone could result in a significant benefit to respondent, specifically a declaration that respondents are entitled to the protections of the Rent Stabilization Law. Towards this end, the court finds that leave to conduct discovery is warranted from 2006 forward; not for the purposes of calculating an overcharge but only for the purpose of respondent's challenge to the regulatory status of the apartment.
Whatever the authority of the legislature to "return" us to the universe of Thornton, Grimm, and Conason, or to interpret those seminal decisions, it is the province of this court is to interpret the new law. Consequently, the court has referred to pre-HSTPA law, the Regina decision, and the plain language of L 2024, ch 95, § 4. The court finds that these laws and controlling authorities can be reconciled and read together to reach the result herein.
Petitioner's Motion for Use and Occupancy
In opposition to petitioner's motion for use and occupancy, respondent correctly argues that a judge shall not award prospective use and occupancy if certain enumerated defenses have been raised. RPAPL 745 (2) provides that the court cannot order deposit or payment of use and occupancy where the respondent can establish to the court's satisfaction that it has properly [*8]interposed certain defenses. Here, respondent has interposed defenses which preclude a prospective award of use and occupancy, to wit, failure to procure a valid certificate of occupancy, and constructive eviction. (RPAPL 745 [2] [ii] (C), [vi].)
CONCLUSION
Accordingly, it is
ORDERED that respondent's motion to conduct discovery via document demands is granted only to the extent that petitioner must respondent to respondent's documents demands with available documentation from 2006 forward is deemed served and filed, within 45 days of this amended decision and order; and it is further
ORDERED that petitioner shall provide a Jackson affidavit upon completion of document production by filing same on NYSCEF;[FN19]

ORDERED that petitioner's cross motion for prospective use and occupancy is DENIED; and it is further
ORDERED that the proceeding may be restored upon completion of document production by notice of motion for respondent to show ample need to depose an agent of petitioner, or for appropriate motion practice pursuant to Article 31 of the CPLR, or for trial.
This constitutes the decision and order of this court.
Dated: July 23, 2024
Brooklyn, New York
HON. KAREN MAY BACDAYAN
Judge, Housing Part

Footnotes

Footnote 1:As the purported improper deregulation occurred in 2010, pre-Housing Stability and Tenant Protection Act ("HSTPA") of 2019 applies to this proceeding. Thus, the "most recent reliable annual registration statement" does not determine the base date rent; rather it is the reliability of the base date rent that must be tainted by fraud.

Footnote 2:This court has previously held that the infamous footnote seven in Regina has been misinterpreted and courts have incorrectly exalted the first sentence over the second sentence of the footnote, which distinguishes "common law fraud" from "fraud in the regulatory context." Willfulness in the regulatory context, the Regina Court noted, means "deliberate and intentional." Regina, 35 NY3d at 356 n 7; Hertzan, 2024 NY Slip Op 24180, *5-6. As recognized by the Court of Appeals in Thornton, Grimm, and Conason, fraud in the context of rent regulation is a distinct construct and is not susceptible to a bright line rule. A broader construct of fraud in the regulatory context better serves the ameliorative purposes of statutes and regulations enacted to protect the public in the regulatory context because such regulations are intended to protect the public. (Id., at *6-7.)

Footnote 3:"We now follow in the footsteps of the Legislature, which passed the Rent Regulation Reform Act of 1997 and clarified the law on overcharges. These amendments make clear that [Burrows v 75-25 153rd St., LLC, 215 AD3d 105 (1st Dept 2023)] is no longer good law, and are returned to the Thorton (sic), Grimm, Connison (sic) line of cases." Assembly Member Rosenthal, Transcript of Assembly Floor debate, page 33, available at https://www2.assembly.state.ny.us/write/upload/transcripts/2023/2-13-24.pdf#search="8011 (last accessed July 3, 2024); see also Assembly Mem in Support of 2023 NY Assembly Bill A06216, incorporated in L 2023, ch 760, available at https://nyassembly.gov/leg/?default_fld=%0D%0A&leg_video=&bn=A06216A&term=&Actions=Y&Memo=Y (last accessed July 3, 2024) ("This amendment will help clarify and codify the standard for applying a fraud exception to the four-year rule that was in place before HSTPA was enacted in light of Burrows v 75-25 153rd Street.") The Burrows court held that a tenant cannot demonstrate justifiable reliance at the pleading stage as a matter of law because the DHCR printout is publicly available. Burrows, 215 AD3d 105, 109 (1st Dept 2023).

Footnote 4:Indeed, in the first appellate decision since the Chapter Amendments took effect, the Appellate Term, First Department in St. Nicholas 24 LLC v Chavez-Lujan, 2024 NY Slip Op 50755(U) (App Term, 1st Dept 2024) upheld the trial court which applied the default formula and assessed treble damages against the landlord for fraudulent overcharge without reference to common law fraud. "The [trial] court specifically found that '[landlord] and its predecessors deliberately hid the regulatory status of the apartment from their tenants by claiming that the apartment was deregulated when it was actually registered with the DHCR and omitted the required riders that would have demonstrated to a tenant that the apartment was still subject to regulations (emphasis added).'" As here, the landlord had not claimed below that the tenant failed to demonstrate all the elements of common law fraud. The court's use of the word "deliberately" harkens to footnote 7 of the Regina decision which notes that willfulness in the regulatory context means "deliberate and intentional." See n 2, supra.

Footnote 5:Grimm, 15 NY3d at 367 ("Generally, an increase in the rent alone will not be sufficient to establish a 'colorable claim of fraud, and a mere allegation of fraud alone, without more, will not be sufficient [to pierce the lookback period] (emphasis added).")

Footnote 6:Regina, 35 NY3d at 362 (referring to one of the four consolidated cases therein and holding that "the complaint was properly dismissed based on the tenants' failure to allege a colorable claim of fraud . . . . (emphasis added)."

Footnote 7:L 2023 ch 760, Part B, § 2 (b), as amended by L 2024, ch 95, § 4.

Footnote 8:Cornell Law School, Legal Information Institute, available at https://www.law.cornell.edu/wex/colorable_claim#:~:text=colorable%20claim%20A%20colorable%20claim%20is%20a%20plausible,claim%20need%20not%20actually%20result%20in%20a%20win (last accessed June 11, 2024.)

Footnote 9:See n 2, supra.

Footnote 10:There is no temporal restriction on reviewing the rent history to determine a challenge to the regulatory status of a unit, regardless of whether the tenant alleges a rent overcharge claim that is entwined with a claim of a fraudulent deregulation. Regina, 35 NY3d at 351 n 4 ("Critically, there is a distinction between an overcharge claim and a challenge to the deregulated status of an apartment . . . ."); AEJ 534 E 88th LLC v New York State Div. of Hous. & Community Renewal, 194 AD3d 464, 465, 470 (1st Dept 2021), citing, inter alia, Regina and noting "there is no time restriction at all" for claims challenging a purported deregulation.

Footnote 11:"[W]here, as here, there is an indication of possible fraud that would render the rent records unreliable, it is an abuse of discretion for DHCR not to investigate it (emphasis added) (internal quotation marks omitted)." Grimm, 15 NY3d at 364 (quoting Grimm v New York State Div. of Hous. & Community Renewal Off. of Rent Admin, 68 AD3d 29, 33 (1st Dept 2009). 

Footnote 12:The rule that emerges from our precedent is that, under the prior law, review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether fraud occurred — not to furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations." Regina, 35 NY3d 332, 355.

Footnote 13:Administrative Code of the City of New York, § 26—516 (a). The statute presumes that an overcharge is willful. "Willfulness is intentionally doing an act and knowing that the act is being done (internal quotation marks and citations omitted)." Lavanant v State Div. of Hous. & Cmty. Renewal, 148 AD2d 185, 190 (1st Dept 1989) "[W]illfulness means 'consciously and knowingly charg[ing] ... improper rent.'" Regina, 35 NY3d at 356 (2020), citing to Lavanant, id.

Footnote 14:To determine whether a party has established "ample need" to conduct discovery in a summary proceeding, the court must find, "in the first instance, [that] the [movant] has asserted facts to establish a cause of action [or defense]." New York Univ. v Farkas, 121 Misc 2d 643, 547 (Civ Ct, New York County 1983).

Footnote 15:"It is almost as if the legislature is saying to the courts, 'Come on, you know a fraudulent scheme to deregulate when you see it.'" Itkowitz PLLC Blog, The "F" Word — the NYS Legislature Takes a Stab at Defining "Fraud" in the Rent Stabilization Context, But in So Doing, Raises More Questions Than It Provides Answers, https://itkowitz.com/blog/2023/12/the-f-word-the-nys-legislature-takes-a-stab-at-defining-fraud-in-the-rent-stabilization-context-but-in-so-doing-raises-more-questions-than-it-provides-answers.html.

Footnote 16:The court should not be compelled to wade through a mass of verbiage and superfluous matter in order to pick out an allegation here and there, which, pieced together with other statements . . . will state a cause of action. The time of the court should not be taken in a prolonged study of a long, tiresome, tedious, prolix, involved and loosely drawn complaint in an effort to save it. Barsella v City of New York, 82 AD2d 747, 747 (1st Dept 1981).

Footnote 17:Neither respondents nor their attorney plead in the answer any details from the DHCR rent history with any specificity. It is only in respondent's attorney's affirmation where such specificity is found, and even then, respondent's attorney nowhere claims "fraud" in support of broad reaching discovery.

Footnote 18:See n 7, supra.

Footnote 19:"Jackson affidavits" are frequently used in New York courts to confirm that documents requested as part of discovery have been searched for and not found. See Jackson v City of New York, 185 AD2d 768 (1st Dept 1992). A proper Jackson affidavit will indicate "where the subject records were likely to be kept, what efforts, if any, were made to preserve them, whether such records were routinely destroyed, or whether a search had been conducted in every location where the records were likely to be found[,]" such that a court may infer a good faith effort to comply with discovery demands. Id. at 770.